Eloise MOORE, Appellant,

v.

MEMORIAL HERMANN HOSPITAL SYSTEM, INC. d/b/a Memorial Hermann Southeast Hospital Company, Appellee.

No. 14–02–01147–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 8, 2004.

---

**2.** Emphasis added.

**3.** Emphasis added.

Dana LeJune, Houston, TX, for appellants.

Wesley Ralph, Ward, TX, for appellees.

Panel consists of Chief Justice HEDGES and Justices HUDSON and FROST.

## OPINION

ADELE HEDGES, Chief Justice.

Appellant Eloise Moore appeals from a take-nothing jury verdict rendered against her and in favor of appellee Memorial Hermann Hospital System, Inc. d/b/a Memorial Hermann Southeast Hospital Company ("MHHS"). This case arises from a dispute about a back injury suffered by appellant during the course of her employment at MHHS.

### Background

After working for MHHS for several weeks as a food service attendant, appellant suffered a back injury during the course of her employment on November 7, 1998. The injury allegedly occurred as a result of her efforts to pull a large, fully-loaded food cart to one of the hospital's patient wings. The morning following the injury, appellant continued to experience back pain and sought attention at the MHHS emergency room. The hospital did not take x-rays of appellant's back during the November 8 visit. The next day, November 9, appellant was still suffering from back pain and visited a chiropractor's office located close to her home. The chiropractor diagnosed appellant as having suffered from an acute spinal strain. Treatment for appellant's injury was ultimately handled by MHHS physicians because the hospital is a non-subscriber to workman's compensation insurance. Appellant returned to her position at MHHS in mid-December 1998, but was restricted to "light duty." Appellant refused to perform tasks she considered outside of "light duty." MHHS terminated her employment in January 1999.

In November 2000, appellant filed this action against MHHS, alleging that her back injury was caused by MHHS's negligence in failing to provide a safe workplace, the proper tools with which to do her job, and proper safety training. The suit was tried to a jury in September 2002. After several days of trial, the jury began deliberations on September 5. The following day, Friday, September 6, the jury sent a note to the judge, requesting a "layman's definition" of proximate cause. The trial court responded appropriately. Later, at 4:25 p.m. that same day, the jury sent another note to the judge, stating, "We are deadlocked! No change and no foreseeable change." The judge then instructed the jury to either continue deliberations until 5 p.m. that day or break at that point and resume on Monday, September 9. Still later that day, the judge received the following note from the jury:

> We are deadlocked 9–No and 3–Yes. The three Yes votes as well as the 9 No votes have stated that they are unwilling to change their vote. Nobody has changed their mind since 4:45 yesterday, of which the entire time has been deliberation of Question Number 1.

Counsel for MHHS then proposed an *Allen* or "dynamite" charge, and, after hearing brief arguments from counsel, the court instructed the jury accordingly. On the following Monday afternoon, at approximately 12:35 p.m., the jury reached a verdict in favor of MHHS. Ten members of the jury found that any negligence of MHHS was not the proximate cause of appellant's injury. This appeal followed.

### The Issues

Appellant raises seven issues in this appeal, claiming that the trial court erred (1) in admitting appellant's Social Security Administration ("SSA") records while subsequently excluding the rebuttal testimony of her vocational expert witness, (2) in admitting appellant's SSA records while subsequently excluding an explanatory letter from the SSA, (3) in excluding the opinion testimony of appellant's treating physician, (4) in excluding the testimony of appellant's workplace safety expert, (5) in refusing to instruct the jury regarding the duties employers owe to their employees, (6) in instructing the jury to continue to deliberate, and (7) in instructing the jury with a "dynamite" charge on a late Friday afternoon. We address these issues below, discussing appellant's first issue with her second, and her sixth issue with her seventh. We affirm.

### Admission of SSA Records

In her first issue, appellant argues that the trial court erred in excluding the rebuttal testimony of Viola Lopez, a vocational rehabilitation expert witness, to explain the contents of appellant's SSA records. In her second issue, appellant argues that the trial court erred in excluding an explanatory letter from the SSA. Appellant does not challenge the admission of the SSA records themselves; her claim is that in light of their admission, the exclusions of (1) Lopez's testimony and (2) the SSA explanatory letter constitute harmful error.

A trial court's decision to admit or exclude evidence is reviewed for abuse of discretion. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000). Unless the trial court's erroneous evidentiary ruling probably caused the rendition of an improper judgment, we will not reverse the ruling. *Id.* An appellate court must uphold the trial court's evidentiary ruling if there is any legitimate basis for it. *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex.1998).

The SSA records contained, *inter alia,* a primary diagnosis that appellant's condition was due to obesity and a secondary diagnosis that appellant suffered from de-

generative changes of the lumbar spine. They also listed the date appellant's disability began as November 1, 1998; this date is six days prior to the date appellant allegedly suffered her injury.

Appellant's first contention is that the trial court erred in excluding the rebuttal testimony of Viola Lopez, a vocational rehabilitation expert witness and former SSA employee. In an offer of proof before the trial court, Lopez testified that, for purposes of payment processing, the SSA routinely lists the "date disability began" as the first day of the month in which the person becomes disabled, and not necessarily the actual date the disability began. Appellant has acknowledged that Lopez was not designated to offer testimony on the subject and that the substance of her testimony was not disclosed to MHHS prior to trial. Therefore, under Rule 193.6(a) of the Texas Rules of Civil Procedure, appellant is not entitled to introduction of the evidence unless "there was good cause for the failure to timely make, amend, or supplement the discovery response" or such failure did not "unfairly surprise or unfairly prejudice" the other party. *See* Tex.R. Civ. P. 193.6(a)(1), (2).

The only arguments appellant raises in support of either prong of this test are that she "trusted that only a few portions of the file, at best, were legally admissible" and that she "could never have imagined that the Court would admit into evidence virtually the entire Social Security file." Appellant has cited no authority, and we are aware of none, which supports this explanation as sufficient evidence of good cause for failure to disclose Lopez's opin-

ion. We find that appellant has failed to meet her burden. *See* Tex.R. Civ. P. 193.6(b); Tex.R.App. P. 38.1(h). Therefore, her first contention is without merit.

Appellant's second contention is that the trial court erred in excluding the SSA explanatory letter, which purports to provide the same explanation offered by witness Lopez as to why the date listed in the SSA records is not necessarily the date appellant's disability began. The letter states in relevant part: "Eligibility for SSI benefits is always based on the first of the month. If the individual became disabled within the month her date of eligibility will be the first of the month." The trial court sustained MHHS's hearsay objection. While she did not assert any hearsay exception at trial, appellant now claims that this letter falls within the hearsay exception for public records and reports under Rule 803(8) of the Texas Rules of Evidence.[1] We disagree. The letter does not fall within the specific categories of Rule 803(8). Therefore, appellant's second contention is without merit.

Because we find that appellant's claims regarding the exclusion of Lopez's testimony and the SSA explanatory letter are unpersuasive, we conclude that the trial court did not abuse its discretion in its exclusion of such evidence. Accordingly, we overrule appellant's first and second issues.

### Exclusion of Treating Physician's Testimony

■ In her third issue, appellant argues that the trial court erred in excluding sev-

---

1. That Rule provides: "Records, reports, statements, or data compilations, in any form, of public offices or agencies setting forth: (A) the activities of the office or agency; (B) matters observed pursuant to duty imposed by law as to which there is a duty to report, excluding in criminal cases matters observed by police officers and other law enforcement personnel; or (C) in civil cases as to any party and in criminal cases as against the state, factual findings resulting from an investigation made pursuant to authority granted by law; unless the sources of information or other circumstances indicate lack of trustworthiness."

eral opinions within the testimony of her treating physician, Dr. S. Ali Mohamed. She contends that these opinions were offered to rebut the testimony of MHHS's retained expert, Dr. Stephen Esses. We apply the usual standards of review for evidentiary rulings. *See Auld,* 34 S.W.3d at 906; *Malone,* 972 S.W.2d at 43.

Under Rule 194 of the Rules of Civil Procedure, a party is required to disclose certain enumerated information about any testifying experts upon request by another party. TEX.R. CIV. P. 194.1, 194.2(f). Appellant concedes that she made no such disclosure concerning Dr. Mohamed pursuant to MHHS's request. She claims that she either was not required to make such disclosure or that she adequately complied with the Rule 194 requirements. We disagree.

First, appellant claims that she was not required to disclose the information required under Rule 194.2(f) because Dr. Mohamed was a rebuttal witness and not a designated or retained expert. However, once MHHS disclosed the opinions of Dr. Esses, its testifying expert, appellant could reasonably have anticipated the need to rebut the testimony of the latter at trial. *See Orkin Exterminating Co., Inc. v. Williamson,* 785 S.W.2d 905, 910–11 (Tex. App.-Austin 1990, writ denied). Therefore, Dr. Mohamed was simply an ordinary rebuttal witness whose use reasonably could have been anticipated; rebuttal witnesses as such are not exempt from the scope of the written discovery rules. *See id.;American Bank of Waco v. Waco Airmotive, Inc.,* 818 S.W.2d 163, 177 (Tex. App.-Waco 1991, writ denied); *Walsh v. Mullane,* 725 S.W.2d 263, 264–65 (Tex.

App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.); *Gannett Outdoor Co. v. Kubeczka,* 710 S.W.2d 79, 84 (Tex.App.-Houston [14th Dist.] 1986, no writ).

Second, appellant claims that she gave proper notice to MHHS that Dr. Mohamed treated appellant. However, she does not claim, and indeed advances no evidence, that she also disclosed other information required by Rule 194.2(f), including the subject matter on which the expert would testify, the general substance of the expert's mental impressions and opinions, and the basis therefor. *See* TEX.R. CIV. P. 194.2(f)(2),(3). Because appellant failed to make, amend, or supplement her discovery response to include all required relevant information concerning Dr. Mohamed, the trial court did not abuse its discretion in excluding Dr. Mohamed's opinion testimony under Rule 193.6(a) of the Rules of Civil Procedure.[2]

Appellant also argues that the trial court erred in excluding Plaintiff's Exhibit 26, a follow-up note written by Dr. Mohamed relating to appellant's July 11, 2002 office visit, because she disclosed it to MHHS in a timely manner. However, she does not address the other grounds of the objection advanced by MHHS, namely, hearsay and relevance. Moreover, she does not explain how, even assuming that the trial court erred in excluding such evidence, the error either probably caused the rendition of an improper judgment or probably prevented her from properly presenting the case to this court. Accordingly, this claim is overruled. *See* TEX.R.APP. P. 38.1(h), 44.1(a).

We overrule appellant's third issue.

---

**2.** We need not address the two prongs of the test for exclusion under Rule 193.6(a)(1) and (2). Appellant makes no argument concerning whether she had good cause for her failure to make such disclosures or how that failure would not have unfairly surprised or prejudiced MHHS. She contends only that Dr. Mohamed's testimony engendered as much surprise on her part as on the part of MHHS. Accordingly, she has waived these issues. *See* TEX.R.APP. P. 38.1(h).

### Exclusion of Workplace Safety Expert

In her fourth issue, appellant argues that the trial court erred in its exclusion of the entire testimony of Edward Ziegler, a workplace safety expert, because it applied a standard governing the admission of scientific evidence, citing *E.I. du Pont de Nemours and Co., Inc. v. Robinson*, 923 S.W.2d 549 (Tex.1995), rather than a general standard applicable to other kinds of expert testimony, citing *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713 (Tex.1998). We apply the usual standards of review for evidentiary rulings. *See Auld*, 34 S.W.3d at 906; *Malone*, 972 S.W.2d at 43.

If the court determines that the underlying facts or data do not provide a sufficient basis for the expert's opinion under Rule 702[3] or 703,[4] the opinion is inadmissible. Tex.R. Evid. 705(c). Based on the evidence before it, the trial court did not abuse its discretion in concluding that Ziegler did not have a reasonable basis for any of his opinions with respect to, in appellant's words, the "nature and extent of the legal duties owed by MHHS to [her], and how those duties were breached."

As evidenced by his deposition testimony and accompanying exhibits, Ziegler concluded, *inter alia,* that MHHS failed to properly select the patient food carts in accordance with the safety concerns for the employees who operate them. Yet he had not seen the carts in person, and he did not know (1) how big the carts were, (2) how much the carts weighed, or (3) how much they could (or should) carry. He also had no knowledge of the relevant factors in determining whether the weight of a loaded cart, or the amount of force to be applied to it, would be excessive. Ziegler concluded that MHHS failed to properly train its employees in how to operate the carts with minimal effort. Yet he had no information concerning what training appellant or any of her co-workers received from MHHS with respect to the operation of the carts. Ziegler concluded that MHHS failed to provide proper safety equipment to protect its employees from sustaining injuries while operating the carts. Yet he could not make a single recommendation as to what training should have been provided to the employees by MHHS. Ziegler concluded that MHHS failed to select the proper floor covering materials to enable the carts to move with minimal effort and risk of injury. Yet he had never seen the carpet used to cover the floors at MHHS and conducted no investigation as to how MHHS selected its floor covering materials; his "whole opinion" was that "a carpet is always going to be harder to move a wheeled cart on than a flat surface like linoleum." Finally, Ziegler opined that MHHS violated the "General Duty Clause" of the federal Occupational Safety and Health Act of 1970 and that these failures proximately caused appellant's injury.

Because Ziegler's analysis fails to take into consideration so many critical factors, we find that the limited amount of information from which he drew his conclusions does not provide a reasonable basis for his opinions. MHHS's objections to his testi-

---

**3.** That Rule provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."

**4.** That Rule provides: "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by, reviewed by, or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

mony are therefore properly addressed to the admissibility of the evidence and not, as appellant suggests, to its weight. We therefore find that the trial court did not abuse its discretion in excluding Ziegler's testimony. Accordingly, appellant's fourth issue is overruled.[5]

### Refusal of Appellant's Proposed Jury Instruction

 In her fifth issue, appellant argues that the trial court erred in refusing to instruct the jury regarding the duties employers owe to their employees. We review a trial court's decision to submit or refuse a particular jury instruction for abuse of discretion. *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex.2000). The trial court has great latitude and considerable discretion in determining whether requested jury instructions are necessary and proper. *Id.* When the trial court refuses to submit a requested jury instruction, the issue is whether the requested instruction is reasonably necessary to enable a jury to render a proper verdict. *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 405 (Tex.App.-Houston [14th Dist.] 1997, writ dism'd).

Appellant claims that the following excerpt from her requested jury instruction was essential to her case, and that the trial court's refusal to submit it constitutes harmful error:

> For question number 1, you are instructed that an ordinary prudent hospital must 1) provide proper tools and equipment for the job to be performed by its employees; 2) provide proper instructions and training for the job to be performed by its employees; 3) warn its employees of known job hazards; 4) provide adequate manpower and help for

the performance of work required of the employees; 5) promulgate and enforce policies and procedures for the prompt maintenance of tools and equipment used by its employees; and 6) to generally provide a safe place for employees to work. [Citing, *inter alia, Brookshire Brothers, Inc. v. Lewis*, 997 S.W.2d 908 (Tex.App.-Beaumont 1999, pet. denied)].

In *Lewis*, the trial court, like the trial court in the present case, submitted a broad-form negligence instruction without explanatory instructions regarding the specific duties employers owe to their employees. *See id.* at 921. The court in *Lewis* found that such explanatory instructions constituted surplus instructions and were therefore properly excluded by the trial court. *Id.* Consequently, in that case, the trial court's refusal to instruct the jury with the requested explanatory instructions was not an abuse of discretion. *Id.*

In the present case, appellant has failed to distinguish the *Lewis* holding; indeed she cited it to the trial court in support of her position, albeit erroneously. We therefore find that the trial court did not abuse its discretion in refusing appellant's requested jury instruction concerning the duties employers owe to their employees. Accordingly, appellant's fifth issue is overruled.

### The "Dynamite" Charge

 In her sixth issue, appellant argues that the trial court erred in charging the jury to deliberate further after receiving notices that the jury appeared to be deadlocked. In her seventh issue, appellant argues that the trial court erred in instructing the jury with a "dynamite" charge[6] on a late Friday afternoon. Ap-

---

**5.** Because we find that the trial court did not abuse its discretion in excluding the testimony of Ziegler, we need not address appellant's contention that such exclusion was "the equivalent of a death penalty sanction" based

upon its alleged "arbitrary and capricious" nature.

**6.** An *Allen* or "dynamite" charge encourages the jury to reach a verdict and is usually given in response to a specific communication from

pellant contends not that the supplemental charges in and of themselves were coercive, but that in the face of multiple efforts by the jury to communicate the apparent deadlock, the charges constitute situational coercion under *Stevens v. Travelers Insurance Co.*, 563 S.W.2d 223 (Tex.1978). We disagree.

■■■ Broad discretion is vested in the trial judge to aid in the administration and expedition of the fact-finding process. *Stevens*, 563 S.W.2d at 228. A potentially coercive statement will not invalidate a supplemental charge unless it retains its coercive nature when the charge is read as a whole, and all circumstances surrounding its rendition and effect are considered. *Stevens*, 563 S.W.2d at 229. However, if no portion of the charge is "possibly coercive when standing alone," it is unnecessary to consider the surrounding circumstances and to determine the harmfulness of its effect. *Id.* at 232.

Appellant argues that the trial court's recitation of an *Allen*-type charge on a late Friday afternoon, and then again on Monday morning when the jury returned, constitutes potential coercion. However, there is no element of coercion here, whether express or implied. In charging the jury as above, the trial judge did not,

as appellant claims, present the jury with "the prospect of being required to deliberate for an entire additional week" or otherwise "be held indefinitely unless and until it reaches a verdict." Having found no element of coercion, we need not consider the surrounding circumstances and the likely effect of the supplemental charges upon the jury. We therefore hold that the trial court did not abuse its discretion in either charging the jury to continue its deliberations or giving the "dynamite" charge on a late Friday afternoon. *See Harris County v. Patrick*, 636 S.W.2d 211, 213 (Tex.App.-Texarkana 1982, no writ). Accordingly, we overrule appellant's sixth and seventh issues.

### Conclusion

The judgment of the trial court is affirmed.

---

the jury during situations in which the jury appears deadlocked. *See Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). The trial judge in the present case gave the following *Allen*-type charge to the jury:

> Ladies and gentlemen, as jurors if you could, in this litigation, reach a verdict, you should do so. I don't mean to say that any individual juror should yield his or her conscience and positive conviction, but I do mean that when you're in the jury room, you should discuss this matter among yourselves carefully and listen to each other. And try, if you can, to reach a conclusion on this issue.
>
> It is your duty, each of your duties as jurors to keep your minds open to every reasonable argument. A juror should not have any pride of opinion and should avoid his actually forming or expressing an opinion. A juror should not, however, surrender any conscientious view found on the evidence, unless convicted [sic] by his or her fellow jurors of his or her error.
>
> As I said before, I'm satisfied that you have not deliberated sufficiently, so that in good conscience, I cannot accept any report that you cannot arrive at an agreement. I'm going to recess you until Monday morning at nine o'clock. Please remember my instruction not to discuss the case with anyone, not each other, not your husbands, wives or family members over the weekend or, certainly, anyone else at the courthouse or elsewhere. . . .