Affirmed and Opinion filed July 3, 2008








Affirmed and Opinion filed July 3, 2008.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00619-CV

_______________

 

SCOTT DUERR AND KIMBERLY DUERR, Appellants

 

V.

 

RON BROWN, AARON DICKEY, BROWN & CROUPPEN, P.C.,
GEORGE FLEMING, ANDRES PEREIRA, AND FLEMING & ASSOCIATES, L.L.P.

Appellees

                                                                                                                                               


On Appeal from the 334th District Court

Harris County, Texas

Trial Court Cause No. 2006-10199

                                                                                                                                                

 

O P I N I O N

Scott Duerr appeals from orders
granting summary judgment on his claims for breach of fiduciary duty against
Ron Brown, Aaron Dickey, Brown & Crouppen, P.C., (collectively ABrown@), and George Fleming, Andres
Pereira, and Fleming & Associates, L.L.P., (collectively AFleming@).  Duerr also contends the trial
court abused its discretion in striking Duerr=s legal malpractice expert and
denying Duerr=s request for a continuance to conduct additional discovery before
deciding the case on summary judgment.  We affirm. 

 








Background

Duerr received two Sulzer hip
replacement implants in 2000.  Duerr underwent additional surgeries after the
implants failed.  Duerr hired Brown to represent him against Sulzer in
connection with the failed hip implants.  Brown associated with Fleming to
handle the case because Fleming already was engaged in implant litigation
against Sulzer. 

Duerr had the option to pursue his
claim individually or as part of a class.  In April 2002, Duerr chose to pursue
his claim individually; after Sulzer threatened bankruptcy, however, he changed
his mind based upon consultation with Brown and Fleming.  Duerr signed a letter
revoking his initial opt-out and agreed to rejoin the class settlement.  Duerr
received $1.6 million as payment for revoking his opt-out and becoming a part
of the settlement class; of this amount, $960,000 was paid directly to him
after attorney=s fees were deducted.  

Duerr contends Fleming and Brown
promised he would receive additional compensation from his participation in the
class settlement as an inducement to re-join the class.  When combined with his
existing recovery of $960,000, Duerr says he was promised a total payment of
$1.68 million after attorney=s fees.  

Duerr was eligible for additional
settlement benefits pursuant to the Sulzer hip implant class settlement if he
could show his injury fell within the purview of the AAffected Product Revision Surgery@ (APRS) fund or the AExtraordinary Injury Fund@ (EIF).  APRS provided benefits to
implant recipients who developed major complications from removal or
replacement of the defective hip implants.  EIF benefits were available to
implant recipients who demonstrated permanent injury as a result of the defective
hip implants.  These benefits were computed under a complex system of matrices,
ranging from Matrix I to Matrix V, with each having specific qualification
criteria.








Duerr contends that Fleming and Brown
incorrectly filed Duerr=s requests for additional benefits under the Matrix IV and V
benefit schemes, and that his requests were denied as a result.  Duerr contends
Fleming and Brown did not properly appeal the denial of additional benefits,
and that he received no benefits under Matrix IV and V as a result.  Duerr also
contends he had a valid claim under the EIF Matrix II settlement scheme; that
Fleming and Brown failed to pursue his claim, leaving him to file his own
Matrix II claim; and that he received only $36,000 in additional benefits as a
result.  Duerr contends he was damaged because he did not receive all of the
additional settlement benefits after attorney=s fees that he was promised.  

Duerr received another $320,000 after
attorney=s fees from his APRS claims, leaving
him with a total recovery of nearly $1.3 million.  This amount still is less
than the $1.68 million recovery net of attorney=s fees that Duerr says he was
promised.

On February 16, 2006, Duerr and his
wife sued Fleming and Brown asserting claims for legal malpractice, breach of
contract, breach of fiduciary duty, and Deceptive Trade Practices Act
violations.  On April 21, 2006, the trial court issued a docket control order
under which Duerr=s expert witnesses would be designated by December 22, 2006;
discovery would end on February 22, 2007; and trial would begin on April 23,
2007.  

On February 16, 2007, Fleming filed a
combined traditional and no-evidence motion for partial summary judgment. 
Fleming challenged Duerr=s claims for breach of contract, breach of fiduciary duty,
and DTPA violations.  Fleming contended that these claims were an impermissible
attempt to fracture a single legal malpractice claim into multiple causes of
action, and that Duerr could proffer no evidence to support these claims. 
Fleming did not seek summary judgment on Duerr=s legal malpractice claim.  








On February 23, 2007, Brown filed a
traditional motion for summary judgment challenging all of Duerr=s claims.  Like Fleming, Brown
contended that Duerr=s claims for breach of contract, breach of fiduciary duty,
and DTPA violations were an impermissible attempt to fracture a single legal
malpractice claim into multiple causes of action.  Brown asserted additional
grounds for dismissal of the DTPA and breach of contract claims.   Brown denied
any liability for the legal malpractice claim because Fleming was the principal
attorney to whom the case had been referred.  Both summary judgment motions
were set for hearing on March 23, 2007.

Duerr filed a response to these
motions on March 16, 2007.  On the day of the summary judgment hearing he filed
a motion seeking to continue the hearing and the trial, and to re-open the
discovery period.  

On March 26, 2007, the trial court
(1) denied Duerr=s motion for a continuance of the summary judgment hearing;
(2) denied Duerr=s motion for a continuance of the trial; (3) granted Fleming=s motion for partial summary
judgment; (4) granted Brown=s motion for summary judgment on all claims asserted by
Duerr; and (5) dismissed all claims against Brown.  At that point, only the
legal malpractice claim against Fleming remained pending.

On March 28, 2007, Fleming filed a
no-evidence summary judgment motion targeting Duerr=s remaining legal malpractice claim
and set the motion for hearing on April 16, 2007.  Fleming contended that Duerr
was unable to proffer evidence of a breach of duty, causation, or damages. 
Fleming noted that the discovery cutoff was February 22, 2007.  Fleming
contended that Duerr unilaterally cancelled the deposition of his only legal
malpractice expert set for February 27, 2007; although the deposition initially
had been rescheduled by agreement for March 1, 2007, that date too was passed
because Duerr=s legal malpractice expert wanted more time to consider the summary
judgment motions.   Duerr offered to have his legal malpractice expert
available on dates in late March or early April.  Fleming insisted on dates in
early March.  No agreement was reached.

  On April 3, 2007, Fleming filed a
motion to strike Duerr=s legal malpractice expert, contending that Duerr had not
made his expert available for deposition.   On April 13, 2007, Duerr filed a
motion requesting a continuance of the summary judgment hearing set for April
16, 2007; a response to Fleming=s motion to strike his legal malpractice expert; and a
response to Fleming=s motion for summary judgment subject to the continuance.  








On April 20, 2007, the trial court
signed an order granting Fleming=s motion to strike Duerr=s legal malpractice expert; denying
Duerr=s motion for a continuance of the
summary judgment hearing; and granting Fleming=s second summary judgment motion on
the remaining legal malpractice claim.  Duerr=s motion for a continuance of the
trial was denied as moot.

With that order, all of Duerr=s claims against Fleming and Brown
were resolved against Duerr.  Duerr field a motion for new trial on May 22,
2007, which was denied on July 3, 2007, and Duerr appealed.[1] 


Standards of Review

Summary Judgment

An appellate court applies de novo
review to a grant of summary judgment, using the same standard that the
trial court used in the first instance.  Valence Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005).  A party may move for a traditional summary
judgment after the adverse party has appeared or answered, and for a
no-evidence summary judgment after an adequate time for discovery has passed. 
Tex. R. Civ. P. 166a(a), (i); McMahan v. Greenwood, 108 S.W.3d 467,
498 (Tex. App.CHouston [14th Dist.] 2003, pet. denied).  

A traditional summary judgment may be
granted if the motion and evidence show  there is no genuine issue of material
fact and the moving party is entitled to judgment as a matter of law. Tex. R.
Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex.
1985).  In reviewing a summary judgment we take as true all evidence favorable
to the nonmovant, indulge every reasonable inference in favor of the nonmovant,
and resolve any doubts in the nonmovant=s favor.  Sudan v. Sudan, 199
S.W.3d 291, 292 (Tex. 2006). 








A no‑evidence motion for
summary judgment must be granted if (1) the moving party asserts that there is
no evidence of one or more specified elements of a claim or defense on which
the adverse party would have the burden of proof at trial; and (2) the
respondent produces no summary judgment evidence raising a genuine issue of
material fact on those elements.  See Tex. R. Civ. P. 166a(i). In
reviewing a no‑evidence motion for summary judgment, we view all of the
summary judgment evidence in the light most favorable to the non-movant, Acrediting evidence
favorable to that party if reasonable jurors could, and disregarding contrary
evidence unless reasonable jurors could not.@ Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex.
2006).  The non-moving party is not obligated to marshal its proof, but it is
required to present evidence that raises a genuine fact issue on the challenged
element.  Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002). 

Sanctions

We review a trial court=s decision imposing sanctions for
discovery abuse under an abuse of discretion standard.  Am. Flood Research,
Inc. v. Jones, 192 S.W.3d 581, 583 (Tex. 2006).  To establish an abuse of
discretion, the complaining party must show that the trial court=s actions were arbitrary or
unreasonable in light of all the circumstances.  Id. at 583. 

Continuance

 A trial court=s order denying a continuance of a
summary judgment hearing will not be disturbed except for a clear abuse of
discretion.  See Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150,
161 (Tex. 2004).  Factors to consider when deciding whether a trial court
abused its discretion in denying a continuance include the length of time the
case has been on file; the materiality and purpose of the discovery sought; and
whether the party seeking the continuance exercised due diligence to obtain the
requested discovery.  Id.

Analysis








The arguments on appeal focus
primarily on whether Duerr has stated a claim for breach of fiduciary duty that
is distinct from his claim for legal malpractice.  Duerr abandoned his breach
of contract claim in his response to Brown=s and Fleming=s motions for summary judgment,
conceding that it was an improperly fractured legal malpractice claim.  Duerr
abandoned his DTPA claim on appeal because he has not challenged the granting
of summary judgment on that claim.  Duerr challenges on appeal the dismissal of
his breach of fiduciary duty claim against Brown and Fleming. Duerr challenges
the dismissal of his legal malpractice claim against Fleming based upon the
trial court=s decision to strike Duerr=s only legal malpractice expert. 
Duerr also challenges the dismissal of his legal malpractice claim against
Fleming and Brown based upon the trial court=s refusal to grant a continuance of
summary judgment hearings and allow additional time for discovery.  We address
each issue in turn.

Breach of Fiduciary Duty

Attorneys Fleming
and Brown owed a fiduciary duty to their client Duerr.  See Archer v.
Griffith, 390 S.W.2d 735, 739 (Tex. 1965). Duerr=s first issue
contends that the trial court erred in granting summary judgment on his claim
that Fleming and Brown breached their fiduciary duty to him.  Fleming=s motion was
presented as both a traditional motion under Rule 166a(a) and a no-evidence
motion under Rule 166a(i).  Brown filed only a traditional motion.  Duerr=s claim for breach
of fiduciary duty was resolved as to all defendants in the March 26, 2007
order.








Fleming and Brown
predicated their traditional motions for summary judgment on the
impermissibility of fracturing a single legal malpractice claim into multiple
causes of action.  See Goffney v. Rabson, 56 S.W.3d 186, 190 (Tex. App.CHouston [14th
Dist.] 2001, pet. denied) (Texas law does not permit a plaintiff to fracture
legal malpractice claims).  
They contend Duerr improperly attempted to split a single claim for legal
malpractice based on the alleged mishandling of his request for additional
benefits into separate claims for legal malpractice and breach of fiduciary
duty.  AWhether allegations against a lawyer,
labeled as breach of fiduciary duty, fraud, or some other cause of action, are
actually claims for professional negligence or something else is a question of
law to be determined by the court.@  Murphy v. Gruber, 241 S.W.3d
689, 692 (Tex. App.CDallas 2007, pet. denied); see also Greathouse v.
McConnell, 982 S.W.2d 165, 172 (Tex. App.CHouston [14th Dist.] 1998, pet.
denied) (the appellate court is tasked with determining the precise nature of
the claims before deciding whether the trial court=s grant of summary judgment to the
defendant was appropriate).[2]

The prohibition against fracturing a
legal malpractice claim does not necessarily foreclose the simultaneous pursuit
of a negligence-based malpractice claim and a separate breach of fiduciary duty
claim. A[W]hen cases say that clients cannot
divide or fracture their negligence claims against their attorneys into other
claims, this does not mean that clients can sue their attorneys only for
negligence.@ Deutsch v. Hoover, Bax & Slovacek, 97 S.W.3d 179, 189 (Tex. App.CHouston [14th Dist.] 2002, no pet.). 
But the plaintiff must do more than merely reassert the same claim for legal
malpractice under an alternative label. The plaintiff must present a claim that
goes beyond what traditionally has been characterized as legal malpractice.  See
Kimleco Petroleum, Inc. v. Morrison & Shelton, 91 S.W.3d 921, 924 (Tex.
App.CFort Worth 2002, pet. denied) (ARegardless of the
theory a plaintiff pleads, as long as the crux of the complaint is that the plaintiff=s attorney did not provide adequate legal
representation, the claim is one for legal malpractice@).

In Deutsch, this court discussed the
analysis for determining when a single legal malpractice claim has been
fractured improperly into multiple causes of action.  

If the gist of a
client=s complaint is
that the attorney did not exercise that degree of care, skill, or diligence as
attorneys of ordinary skill and knowledge commonly possess, then that complaint
should be pursued as a negligence claim, rather than some other claim.  If, however, the client=s complaint is more appropriately
classified as another claim, for example, fraud, DTPA, breach of fiduciary
duty, or breach of contract, then the client can assert a claim other than
negligence.








97 S.W.3d at 189 (citations omitted). 
A legal malpractice claim focuses on whether an attorney represented a client
with the requisite level of skill, while a breach of fiduciary duty claim
encompasses whether an attorney obtained an improper benefit from the
representation.  See Aiken v. Hancock, 115 S.W.3d 26, 28 (Tex. App.CSan Antonio 2003,
pet. denied).  Breach of fiduciary duty involves conduct including failure to
disclose conflicts of interest; a failure to deliver funds belonging to the
client; placing personal interests ahead of a client=s interests;
misuse of client confidences; taking advantage of the client=s trust; engaging
in self-dealing; and making material misrepresentations.  See Goffney,
56 S.W.3d at 193. 

In determining
whether Duerr asserted a breach of fiduciary claim that is distinct from his
legal malpractice claim, we examine the petition; Duerr=s response to the
defendants= motions for summary judgment; and Duerr=s deposition.
Duerr alleges as follows in his First Amended Petition: 

Plaintiffs restate and incorporate
herein the factual background and allegations above and would show unto the
Court the following:

At all times mentioned herein an attorney/client relationship existed
between Defendants and Plaintiff which required Defendants to exercise the
highest degree of care and loyalty to their client and to place the client=s interest above
that of their own firms.  This duty was breached and the breach of that duty
proximately caused damages to Plaintiff in the amount within the jurisdictional
limits of this Court.

From Duerr=s petition,
therefore, it is not clear what conduct he targets as a breach of a fiduciary
duty. 








Brown and Fleming
contend that Duerr=s breach of fiduciary duty claim is merely
a fractured legal malpractice claim because Duerr=s petition sets
forth no facts under the label ASecond Cause of Action: Breach of
Fiduciary Duty.@  See Greathouse, 982 S.W.2d at 172 (plaintiff determined to have
impermissibly fractured a legal malpractice claim after simply listing a number
of identical paragraphs under different headings, including negligence, breach
of fiduciary duty, and breach of duty of good faith and fair dealing, without
separate and specific allegations of wrongdoing); see also O=Donnell v. Smith, 234 S.W.3d 135, 146 (Tex. App.CDallas 2007, pet. granted) (merely
asserting attorney did not Aexercise the highest degree of care, good faith, and honest
dealing@ is insufficient to make an
independent claim for breach of fiduciary duty without presenting some
additional evidence); cf. Deutsch, 97 S.W.3d at 190 (a party may allege the
same facts under legal malpractice and under breach of fiduciary duty; Texas
Rule of Civil Procedure 48 allows a party to plead in the alternative).

Duerr predicates
his legal malpractice claim on allegations that Fleming and Brown mishandled
the filing of Duerr=s requests for additional benefits under
the settlement matrices and mishandled the appeal of the benefit decision.  In
this appeal, Duerr predicates his breach of fiduciary claim on three theories:
(1) Brown and Fleming induced Duerr to rejoin the class settlement by promising
him a recovery of $1.68 million net of attorney=s fees, but Duerr=s recovery was
less; (2) Brown and Fleming had a Aconflict of
interest@ because they used
the settlement of Duerr=s valuable claim as leverage to obtain a
larger settlement for four other plaintiffs and larger fees for themselves; and (3) Brown and Fleming did not
disclose the Aconflict of interest@ to Duerr.[3] 

Duerr=s first theory is
that Brown and Fleming breached their fiduciary duty to him because they promised him a larger
recovery net of attorney=s fees than he ultimately received.  Duerr alleges that the
proper information was not filed under the matrices governing additional
compensation; items were filed incorrectly; improper information was filed; and
an administrative appeal from the denial of benefits was not pursued timely or
to its fullest extent.  Duerr alleged that Brown and Fleming had opportunities
to correct these asserted errors, and Amay have mitigated the negligence of
all Defendants@ had they done so.








These are allegations that Duerr=s Aattorney[s] did not exercise that
degree of care, skill, or diligence as attorneys of ordinary skill and
knowledge commonly possess.@  See Deutsch, 97 S.W.3d at 189; see also Murphy,
241 S.W.3d at 692-93 (giving erroneous legal opinion or advice, delaying or
failing to handle a matter, or not using ordinary care in preparing, managing,
and prosecuting a case constitutes legal malpractice); Goffney, 56
S.W.3d at 193 (allegations attorney abandoned client at trial, did not properly
prepare lawsuit for trial, and misled client into believing attorney was
prepared for trial were claims for legal malpractice). Because Duerr=s first theory focuses on the quality
of representation provided, it alleges legal malpractice and nothing more. 
See Greathouse, 982 S.W.2d at 172 (when the crux of complaint is failure to
provide adequate legal representation, the claim asserts legal malpractice).

Duerr=s second theory is that Brown and
Fleming had a conflict of interest arising from the settlement of Duerr=s claim together with claims by four
other hip implant recipients who were less severely injured.  Duerr contends
that his more valuable claim was used as leverage to increase the amount paid
to the other four claimants.   In Duerr=s summary judgment response, he
asserts that his lawyers wanted to Aforce Plaintiff to rejoin the class
for $1.6 million so that the four less injured clients would be paid a total of
$900,000 [out] of which Fleming and Associates would receive a large fee.@  Duerr points to a letter from
Sulzer=s attorney to Fleming memorializing a
confidential agreement under which Sulzer agreed to pay $2.5 million to five
Sulzer claimants represented by Fleming (Duerr and four others) in exchange for
each claimant signing a revocation of Aprior written opt-outs@ and agreeing to participate in the
class settlement.  The letter indicated that Duerr would receive $1.6 million;
litigant Cassone would receive $100,000, litigant Martin would receive
$250,000, litigant Heathington would receive $300,000, and litigant Retherford
would receive $250,000.  








Because Duerr=s petition makes only a perfunctory
reference to breach of fiduciary duty, Duerr=s deposition testimony necessarily
assumes an important role in answering the legal question of whether the Aconflict of interest@ theory describes a breach of fiduciary
duty claim distinct from any alleged legal malpractice.  Duerr=s deposition identifies the reason he
is suing, which in turn helps to focus the analysis of whether Duerr asserts a
freestanding breach of fiduciary duty claim or instead simply affixes a
different label to his legal malpractice claim.

Duerr testified as follows:

 

Q.        Now, I believe that the crux of the lawsuit
is that you are upset because you believe that you were promised that you would
receive in your pocket $1,680,000; is that correct?

 

A.        Yes.                 

 

* * * 

 

Q.        So with regard to your lawsuit or your
claims against Sulzer because of the hips that were defective, you pocketed
approximately $1.3 million; is that right?

 

A.        That sounds about right, yes.

 

Q.        So that leaves a net difference of
approximately $300,000 that you believe B 

 

A.        380 B 

 

Q.        $380,000 that you believe was promised to
you?

 

A.        Yes

 

Q.        And that=s
why you filed this lawsuit?

 

A.        Yes.

 

When he was asked to discuss
fiduciary duty specifically, Duerr testified that AI think [Fleming and Brown] . . .
took me and used me as a trump card and used my case as leverage to better all
the other cases that they had; therefore, making more money for them and then
throwing me to the wayside.@  Duerr also testified as follows:

 








Q.        What facts do you have to support your
allegation, Mr. Duerr, that you believe Fleming & Associates or Brown &
Crouppen used your case to better all their other cases?

 

A.        Pretty much common sense.

 

Q.        You=re
basing that opinion on common sense, your common sense?

 

A.        I have no answer.

 

Q.        So you don=t know why you=ve made that allegation?

 

A.        Because of conversations with [an attorney
from Brown & Crouppen] . . . that brought me to that.

 

Q.        What conversations?

 

A.        That I was one of the worst cases that they
had and that Fleming had and that with me now with them they would be able to
pursue more and harder.

 

Immediately following his statement
about having been thrown Ato the wayside,@ Duerr described his belief that
Fleming and Brown failed to prosecute a timely and proper administrative appeal
within the class settlement structure from the denial of his requests for
additional benefits.  Elsewhere in his deposition, Duerr testified as follows:

Q.        You claim in your petition that the
defendants abandon[ed] you; is that correct?

 

A.        Yes.

 

Q.        When do you believe that they abandon[ed]
you?

 

A.        Right
after they collected their 40 percent off the 1.6 million to opt back in.

 








In light of this deposition
testimony, Duerr=s Aconflict of interest@ theory boils down to a contention
that other hip replacement claimants represented by his lawyers obtained
greater recoveries than they otherwise would have obtained because of Duerr=s participation in the class
settlement, and that his lawyers thereby obtained additional fees.  But the Acrux@ of Duerr=s lawsuit remains his contention that
he got less than the promised $1.68 million recovery net of attorney=s fees.

Duerr does not attribute his failure
to obtain the promised $1.68 million net recovery to the participation of other
hip implant claimants who allegedly received larger recoveries than they
otherwise would have received.  Duerr does not attribute this failure to his
attorneys= receipt of fees in connection with recoveries by these other claimants. 
Rather, Duerr attributes this failure to being thrown Ato the wayside@ and Aabandon[ed]@ by attorneys who allegedly
mishandled his requests for additional benefits within the settlement class
structure, and then allegedly mishandled an appeal from the denial of those
requests.  Given his testimony, Duerr=s Aconflict of interest@ theory does not describe a breach of
fiduciary duty claim distinct from his legal malpractice allegations.  See
Judwin Props., Inc. v. Griggs & Harrison, 911 S.W.2d 498, 507
(Tex. App.CHouston [1st Dist.] 1995, no pet.) (breach of fiduciary duty claim was
impermissibly fractured legal malpractice claim because plaintiff failed to
demonstrate how alleged breach of fiduciary duty benefitted fiduciary at the
expense of the beneficiary).

Duerr tries to bolster his position
by stressing that he has requested fee forfeiture, which is a remedy available
for breach of fiduciary duty.  See Burrow v. Arce, 997 S.W.2d 229, 246
(Tex. 1999).  Duerr=s invocation of fee forfeiture does not change the analysis.  During his deposition, Duerr
testified as follows:

Q.        Okay.  And why, if they did get you so much
money, should they give you back half of the fee you paid them?

 

A.        Because
they didn=t do what they promised and they cause me hardships to this day.








This testimony confirms that Duerr=s breach of fiduciary duty contention
(1) centers on the lawyers= alleged failure to Ado what they promised@ by failing to deliver a $1.68
million net recovery; and (2) does not assert that he suffered this specific
monetary consequence because his interests were subordinated to those of his
attorneys or other claimants.  

This analysis also addresses Duerr=s third theory predicated on a
failure to disclose the asserted Aconflict of interest.@  Duerr=s deposition
testimony establishes that breach of fiduciary duty arising from a Aconflict of interest@ is merely an
alternative label for Duerr=s underlying legal malpractice complaint
about receiving less money than he was promised.  The Aconflict of
interest@ contention is not
a distinct breach of fiduciary duty claim that stands apart from the asserted
legal malpractice.  Because the Aconflict of
interest@ is not a distinct
claim, the asserted failure to disclose the Aconflict of
interest@ also is not a
distinct breach of fiduciary duty claim that stands apart from the alleged
legal malpractice.

In sum, Duerr does
not state a separate breach of fiduciary duty claim based on the failure
to deliver a promised level of recovery because that failure is
attributed to mishandling of Duerr=s claims within
the class settlement structure.  That is a malpractice claim as a matter
of law. Duerr does not state a separate breach of fiduciary duty
claim based on a Aconflict of interest@ arising from
the settlement of multiple claims because Duerr contends his interests
were compromised by the failure to deliver a promised level of recovery
attributable to his lawyers= inattention to his benefit requests and
appeal.  That is a malpractice claim as a matter of law.  See
Deutsch, 97 S.W.3d at 188-90 (failure to represent client on appeal is
claim for legal malpractice, not breach of fiduciary duty).   Duerr does
not state a separate breach of fiduciary duty claim based on a failure to
disclose the asserted Aconflict of interest@ because the Aconflict of
interest@ is not a separate
claim, and because Duerr contends his interests were compromised by the
failure to deliver a promised level of recovery attributable to his lawyers= inattention. That
too is a malpractice claim as a matter of law.

We overrule Duerr=s first issue.

 

 








Legal Malpractice

Duerr next claims that the trial
court erred in striking his legal malpractice expert and in granting summary
judgment in favor of Fleming on Duerr=s legal malpractice claim.[4] 
This claim against Fleming was the only claim remaining after the trial court=s March 26, 2007 order.  Duerr
concedes that in striking his expert, the trial court dealt a fatal blow to his
legal malpractice claim. 

Duerr filed this lawsuit on February
16, 2006.  On April 21, 2006, the trial court issued a docket control order
mandating that Duerr designate his experts by December 22, 2006, and stated
that failure to timely respond would be governed by Texas Rule of Civil
Procedure 193.6.  The docket control order set a discovery deadline of February
22, 2007.  Trial was set for April 23, 2007. On June 22, 2006, Duerr amended
his petition for the first and only time.  

In the months that followed, Duerr
deposed no witnesses and engaged in no discovery beyond mandated written
disclosures under Texas Rule of Civil Procedure 194.  Duerr complied with the
docket control order by designating attorney Robert Charles Lyon as his
testifying expert.  His
designation was made in this response:

It is expected Mr. Lyon will testify on the issues of
the Defendant=s failure to comply with the standard of care, that
their conduct was negligent, that their conduct was a proximate cause of the
damages claimed by the Plaintiffs; and that a fiduciary relationship existed
between Plaintiffs and Defendants which was violated and a refund of all or a
part of the attorney=s fees received should be made.   

 








Because Lyon provided no report,
Duerr was obligated to make Lyon available for deposition Areasonably promptly@ after designating him. See Tex.
R. Civ. P. 195.3.  Under Texas Rule of Civil Procedure 194.2(f)(3), Lyon=s deposition was necessary to provide
the Ageneral substance of the expert=s mental impressions and opinions and
a brief summary of the basis for them,@ which had not been made available
through the designation or through any supplementation.  

Duerr initially agreed to make Lyon
available for deposition on February 6, 2007 B  before the discovery cutoff.  Lyon
cancelled this deposition, and it was rescheduled by agreement after the
discovery cutoff on March 1, 2007.  Lyon again cancelled.  Fleming insisted on
a new date within the next two weeks because of the looming trial scheduled to
begin on April 23, 2007.  Fleming offered to depose Lyon in early March, but
Lyon had other commitments.  Duerr offered to make Lyon available on dates in
late March or early April.  Fleming contended that these dates were too close
to the April 23, 2007 trial.  On April 3, 2007, Fleming moved to strike Lyon as
an expert witness in the case.  

Duerr filed three documents on April
13, 2007: a response to Fleming=s motion for summary judgment; a motion for a continuance of
the summary judgment hearing; and a response to Fleming=s motion to strike Duerr=s legal malpractice expert.  In his
response to Fleming=s motion to strike, filed on April 3, 2007, Duerr included a
report by Lyon addressing the scope and basis of his opinion.   The trial court
considered these motions on April 20, 2007, only three days before the
scheduled trial, at a single hearing that encompassed Fleming=s motion for final summary judgment
filed March 28, 2007.   

The trial court heard both sides with
respect to all motions pending at the hearing, and thereafter signed its order
granting Fleming=s motion for final summary judgment and simultaneously
granting Fleming=s motion to strike Lyon.  The trial court stated: 

The record of the cause seems undisputed: It was not
until April 13, 2007, via response to motion for summary judgment and ten days
prior to the trial setting, that Defendants were afforded their first peek at
the nature of Mr. Lyon=s expert opinions in this cause.  Prior to that time,
Plaintiff=s disclosures provided nothing more than an indication
that Mr. Lyon would testify about the standard of care and breach thereof.  The
Court is mindful of and sympathetic with Plaintiff=s counsel=s
personal issues; however, those issues, which occurred during 2006, do not
explain a failure to comply with expert disclosures in 2007 of failure to
timely seek relief from the Court=s
scheduling order. The Court determines that the motion must be GRANTED.








The failure to provide expert
information as required by the rules is sanctionable by exclusion of that
expert=s report.  See Tex. R. Civ. P.
193.6; Moore v. Mem=l Hermann Hosp. Sys., Inc., 140 S.W.3d 870, 875 (Tex. App.CHouston [14th Dist.] 2004, no pet.). 
To avoid this sanction, Duerr had to demonstrate that his failure to make such
disclosures would not have unfairly surprised or prejudiced Fleming, or that
his failure to make such disclosures was for good cause.  See Tex. R.
Civ. P. 193.6; Moore, 140 S.W.3d at 875. 

The trial court acted within its
discretion in striking Lyon and his affidavit.  The trial court was entitled to
conclude that Fleming was prejudiced by the failure to (1) make Lyon available
for deposition, or (2) provide Fleming with Lyon=s expert report.  Similarly, Duerr
did not establish good cause for waiting until the eve of trial to begin
engaging in discovery, or for failing to make his expert witness available
until after the close of discovery.  Duerr=s only argument was that Fleming did
not make sufficient concessions to Duerr in scheduling Lyon, and that any
failure to make Lyon available was not due to Duerr=s lack of willingness.  The trial
court acted within its discretion in concluding that Duerr failed to establish
good cause under Rule 193.6.

Duerr cannot prevail on appeal even
if Lyon=s affidavit is considered.  A legal
malpractice plaintiff must prove: (1) the attorney owed the plaintiff a duty of
care; (2) the attorney breached that duty; (3) the breach proximately caused
the plaintiff=s injuries; and (4) damage occurred. Farah v. Mafrige & Kormanik,
P.C., 927 S.W.2d 663, 670 (Tex. App.CHouston [1st Dist.] 1996, no writ). 
A legal malpractice claim must be supported by expert testimony.  See
Alexander v. Turtur & Assocs., Inc., 146 S.W.3d 113, 119-20 (Tex.
2004).  When the asserted legal malpractice involves the results of prior
litigation, the plaintiff bears the additional burden of proving that, Abut for@ the attorney=s breach of duty, he would have
prevailed on the underlying cause of action and would have been entitled to
judgment.  See Greathouse, 982 S.W.2d at 172; Schlager v. Clements,
939 S.W.2d 183, 186-87 (Tex. App.CHouston [14th Dist.] 1996, writ
denied).  This requirement is known as the  Asuit within a suit@ requirement.  See Greathouse,
982 S.W.2d at 173.  








Fleming=s no-evidence motion for summary
judgment on legal malpractice contends that Duerr failed to raise a fact issue
as to whether the alleged legal malpractice was the proximate cause of Duerr=s damages.  Even if Lyon=s report had been considered, that
expert report could not forestall summary judgment because Lyon failed to
establish that Duerr would have prevailed in his underlying claims for additional
benefits.[5]  The expert
report by Robert Charles Lyon makes several conclusory statements to the effect
that Fleming=s negligent acts were the proximate cause of Duerr=s damages.  However, Lyon does not
state that Duerr would have prevailed on the underlying requests for additional
benefits.  Lyon does not establish that Duerr was eligible for a greater
recovery than that already received under the settlement agreement.  Fleming
has contended that Duerr was not entitled to any greater payout than that
already received because (1) Duerr=s hip dislocation occurred four days
before his covered revision surgery, making him ineligible for Matrix IV
recovery;[6] (2) Duerr=s own physician provided the report
upon which his claim was denied in regards to Matrix V, and he failed to
establish that Duerr was more severely injured; (3) Duerr himself filed for
recovery under Matrix II and successfully recovered $36,000, negating any harm
done by defendants as to the Matrix II claims; and (4) all appeals had been
exhausted when the final order of the special master declined Duerr=s claims.

To establish a viable legal
malpractice claim, Duerr had to establish that he would have prevailed on the
allegedly mishandled claims.  Lyon=s affidavit did not establish this
requirement.  Aiken, 115 S.W.3d at 29; Greathouse, 982 S.W.2d at
172.  Therefore, Duerr=s legal malpractice against Fleming would not have survived
Rule 166(a)(i) even if Lyon=s affidavit had been considered.








Accordingly, Duerr=s second issue is overruled.

Continuance 

Duerr=s third issue contends that the trial
court abused its discretion in denying a continuance to the summary judgment
hearings.  Duerr twice moved for continuances.  The first motion was filed in
response to Fleming=s February 16, 2007 partial summary judgment motion and Brown=s February 23, 2007 full summary
judgment motion.  This first motion for a continuance included a request for a
new trial date and an extension for discovery.  This motion was filed on the
same day of the hearing on the Brown and Fleming motions for summary judgment. 
Although Duerr contends there is some doubt about whether the trial court ruled
on this motion for continuance, the trial court specifically denied Duerr=s request in an order signed March
26, 2007, which also granted the summary judgments that had been requested by
Brown and Fleming. 

Duerr=s second motion for continuance was
filed on April 13, 2007 B on the eve of trial scheduled for April 23, 2007 B in response to Fleming=s motion for final summary judgment
on Duerr=s malpractice claim.  Duerr requested
a continuation of the hearing, re-opening of discovery, and a new scheduling
order.  On April 20, 2007, the trial court denied these requests and granted
summary judgment to Fleming on Duerr=s legal malpractice claim.

Courts have considered the following
nonexclusive factors when deciding whether a trial court abused its discretion
in denying a motion for continuance seeking additional time to conduct
discovery: the length of time the case has been on file; the materiality and
purpose of the discovery sought; and whether the party seeking the continuance
has exercised due diligence to obtain the discovery sought.  Two Thirty Nine
Joint Venture, 145 S.W.3d at 161. 








The first factor is the length of
time the case has been on file.  McMahan v. Greenwood is instructive in
this regard.  See McMahan, 108 S.W.3d at 498.  The lawsuit in McMahan
was filed nearly 28 months before the granting of summary judgment, with 16
months in between subject to a bankruptcy stay, allowing the parties a full
year to conduct discovery.  Id. at 498-99, the trial court found this to
be sufficient time for discovery and denied the continuance; on appeal we
concluded that the trial court acted within its discretion is so determining.  Id.
at 499.

In the case before us, the parties
had from February 16, 2006  B when the original petition was filed B until February 22, 2007 B  when the docket control order ended
discovery B to conduct discovery and to prepare for an April, 23 2007 trial.  The
trial court acted within its discretion in concluding that this was sufficient
time for dicovery.  This factor weighs in favor of Fleming and Brown.  See
Perrotta v. Farmers Ins. Exch., 47 S.W.3d 569, 576 (Tex. App.CHouston [1st Dist.] 2001, no pet.)
(plaintiff has obligation to research a case before bringing suit; trial court
within discretion to deny continuance, noting seven months  was sufficient to
effect discovery and motion for summary judgment was reasonable).[7]








The second factor considers the
materiality and purpose of the discovery sought.  When the basis for the requested
continuance is Awant of testimony,@ the movant must
show that (1) the testimony is material; (2) due diligence has been used to
obtain the testimony; (3) there is an explanation given for the failure to
obtain the testimony; and (4) the testimony cannot be procured from another
source. Tex. R. Civ. P. 252; see Blake v. Lewis, 886 S.W.2d 404, 409
(Tex. App.CHouston [1st Dist.] 1994, no writ) (proponent of a
motion for continuance should state what specific discovery is material and
show why it is material). 
While Duerr asserted his need to depose the attorneys for Fleming and Brown, he
never states what their depositions would demonstrate or how this information
would assist Duerr or the court.  See Perrotta, 47 S.W.3d at 576
(appellant failed to show how additional discovery was pertinent).  A motion
for a continuance must Areflect any need for additional discovery or what might be
expected to be developed as evidence with additional depositions.@  Gabaldon v. Gen. Motors Corp.,
876 S.W.2d 367, 370 (Tex. App.CEl Paso 1993, no writ) (without this showing, the record reflects
no basis for determining that the trial court abused its discretion).@  Because Duerr did not satisfy this
standard, this factor weighs in the favor of Fleming and Brown.

Finally, we consider the diligence of
the party seeking continuance.  It is Awell established
that the failure of a litigant to diligently utilize the rules of civil
procedure for discovery purposes will not authorize the granting of a
continuance.@  State v. Wood Oil Distrib., Inc., 751 S.W.2d
863, 865 (Tex. 1988); see
also Schmidt v. Bell,
No. 01-06-00161-CV, 2008 WL 921702, at *1 (Tex. App.CHouston [1st Dist.] April 3, 2008, no
pet. h.) (in addition to describing the evidence sought, a verified motion must
state with particularity the diligence used to obtain the evidence, and explain
why the continuance is
necessary).   In this
case, Duerr had nearly a year to engage in discovery and failed to utilize
available discovery methods until after the discovery period ended.  When a party is
prevented from deposing opponents because it failed to act timely, that is a Apredicament of its
own making@ and the Arisk@ a party takes by
not Adiligently
pursuing discovery.@   Wood Oil Distrib., Inc., 751
S.W.2d at 865.   

In this case, Anothing prevented
[Duerr] from conducting
discovery earlier in the case, and his failure to make diligent efforts to
secure discovery did not authorize the granting of a continuance.@  See Perrotta, 47 S.W.3d at
576-77; see also Carbonara v. Tex. Stadium Corp., 244 S.W.3d 651, 659
(Tex. App.CDallas Jan. 24, 2008, no pet. h.) (while appellant explained unsuccessful
discovery attempts since filing of summary judgment, appellant never explained
why discovery was not conducted before).  This factor also weighs in favor of
Fleming and Brown.

Because all of the pertinent factors
weigh in favor of Fleming and Brown, we conclude that the trial court acted
within its discretion in denying both requests for a continuance.  Accordingly,
Duerr=s third issue is overruled.

 

 

 








Conclusion

The trial court=s judgment is affirmed.

 

 

/s/        William J. Boyce

Justice

 

Judgment rendered and Opinion filed
July 3, 2008.

Panel consists of Chief
Justice Hedges, and Justice Boyce and Senior Justice Hudson.*









[1]           Duerr=s
wife does not challenge the dismissal of her claims on appeal.





[2]           In Duerr=s
response to an individual defendant=s
special appearance, Duerr stated: APlaintiffs
bring this cause of action basically as one of legal malpractice . . . .@  Brown contends this statement is a judicial
admission that confines Duerr to bringing only a malpractice claim.  See
Horizon/CMS Healthcare Corp. v. Auld, 34 S.W.3d 887, 905 (Tex. 2000) (a
judicial admission may be made in live pleadings);  Holy Cross Church of God
in Christ v. Wolf, 44 S.W.3d 562, 568 (Tex. 2001) (a judicial admission may
also be made in a response to a motion or counter-motion).  The judicial
admission, however, must be clear and unequivocal.  See Holy Cross Church of
God in Christ, 44 S.W.3d at 568.  We do not believe this statement is so
unequivocal as to constitute a judicial admission. 





[3]           Plaintiff=s First Amended Petition makes no reference to an asserted conflict of
interest, a failure to disclose the asserted conflict of interest, or to the
settlement of claims by other hip implant recipients.  Duerr=s summary judgment response and appellate briefs
contain passing references to the asserted conflict, the failure to disclose,
and the other claimants.





[4]           The dispute over striking Duerr=s legal malpractice expert does not affect the summary
judgment granted in favor of Brown on Duerr=s
legal malpractice claim.  By the time Duerr=s
expert was stricken, summary judgment already had been granted in favor of
Brown on all claims against Brown, including legal malpractice.





[5]           Duerr also contends that Fleming failed to
file for $36,000 under Matrix II.  Duerr had shown no damage because he filed
for the recovery and was paid the full $36,000 available under Matrix II. Even
if Fleming was negligent with regard to a Matrix II filing, Duerr suffered no
harm.





[6]           Duerr=s
hip dislocation occurred on September 29, 2000, and his covered revision
surgery (CRS) occurred on October 3, 2000.  To be eligible for benefits under
Matrix IV, an individual=s hip dislocation had to have taken place within 90
days following the CRS.





[7]           Brown points out that the second motion for
a continuance was filed after all claims against it already had been resolved
in the first order granting motion for summary judgment.





*           Senior Justice J. Harvey Hudson sitting by
assignment.