**Opinion issued April 12, 2016**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-14-00799-CV

_____

**BARBARA REGINA SCHLEIN, Appellant/Cross-Appellee**

**V.**

**ANTHONY GRIFFIN, Appellee/Cross-Appellant**

---

**On Appeal from the County Court at Law No. 2**
**Galveston County, Texas**
**Trial Court Case No. CV-0069481**

---

## MEMORANDUM OPINION

Appellee and cross-appellant, Anthony P. Griffin *d/b/a* A Griffin Lawyers, brought suit on a breach of contract claim arguing that appellant and cross-appellee, Barbara Regina Schlein, failed to pay Griffin attorney's fees due to him

for his work representing her in her divorce proceeding. Schlein counter-sued, alleging breach of contract, breach of fiduciary duty, fraud, and breach of the Deceptive Trade Practices Act ("DTPA"), among other causes of action. The jury found for Griffin on his breach of contract claim, awarding him $105,750.00 in actual damages for attorney's fees, $22,399.29 in costs he incurred in representing Schlein in her divorce, and $62,866.00 in attorney's fees for the instant action. Regarding Schlein's breach of the DTPA claim, the jury found that Griffin knowingly engaged in an unconscionable action or course of action and found $0 in actual damages and $5,000.00 in additional damages. Griffin filed a motion to enter judgment on the verdict except that he sought a judgment notwithstanding the verdict ("JNOV") on the jury's DTPA liability and additional damages findings. The trial court entered judgment on the verdict, and both parties filed notices of appeal.

Schlein argues on appeal that: (1) the trial court erred in permitting Griffin to bring this suit in his individual capacity; (2) the trial court erred in excluding evidence of thirty-two grievances and lawsuits filed against Griffin; (3) the trial court erred in permitting undisclosed "rebuttal" witnesses to testify to Griffin's character; (4) the trial court erred in submitting a jury question on her breach of fiduciary duty claim that placed the burden of proof on her; (5) the jury's finding that Griffin did not breach his fiduciary duties to her was based on insufficient

evidence; (6) the trial court erred in excluding Griffin's original petition from evidence; (7) the jury's finding of zero actual damages on her DTPA claim was based on insufficient evidence; (8) the trial court erred in permitting Griffin's expert witness to testify on the reasonableness and necessity of the attorney's fees in the divorce proceedings; and (9) Griffin's expert witness' testimony was insufficient to support the amount of damages in the form of reasonable attorney's fees.

Griffin argues on appeal that: (1) the finding of no actual damages on Schlein's DTPA claim is fatal to the award of additional damages; and (2) the trial court erred in denying his motion for JNOV on the jury's findings of damages under the DTPA.

We modify and affirm as modified.

## Background

Schlein and Griffin met in 2009 while Schlein was involved in a contentious divorce action and other related legal matters. When Schlein met Griffin, she was already represented by an attorney who charged her an hourly rate for attorney's fees and she had hired three other attorneys prior to that. Schlein had spent approximately $179,000.00 on attorneys' fees by the time she had met Griffin, and the family court had enjoined her from expending any additional funds on attorney's fees without approval of the court.

3

Although the parties disagree about the circumstances of their initial meetings, Schlein and Griffin executed an agreement ("Fee Agreement") regarding Griffin's provision of legal services. The Fee Agreement provided that the parties to the agreement were "A Griffin Lawyers/Anthony P. Griffin, Inc." and "Barbara Regina Schlein." The Fee Agreement authorized Griffin to act as Schlein's attorney "relative to all matters concerning the divorce/family related matter/civil issues (tort issues) in a matter styled In the Matter of the Marriage of Barbara Regina Schlein and Robert Schlein; In the County Court at Law, No. 2; Galveston County, Texas: Cause No. 09FD2371." It also provided for Schlein to pay $35,000 as a retainer fee and stated that the "retainer is non-refundable. This means that once the fee is paid, it shall be deemed earned. This does not mean that the retainer represents the total attorney fees due the firm" and that the "retainer fee should not be interpreted as constituting the full reasonable fee to which the Lawyers may be entitled for services performed." The Fee Agreement stated that Griffin "will keep time records in this matter and will not bill for any additional work unless and until the services rendered exceed the retainer amount" and that Griffin would bill at a rate of $300 per hour.

Additionally, the Fee Agreement contained a footnote stating:

Currently Petitioner is under an order of the Court that prevents the expenditure of funds without the approval of the Court. No payment of fees will take place unless and until the Court approves the payment of the retainer amount and/or an order is entered releasing

4

the injunction overbroad scope (can be interpreted to include separate property of Petitioner). The attorneys anticipate filing a motion with the Court to address the broadness of the order and/or releasing of funds to pay the subject retainer.

Finally, the Fee Agreement set out certain obligations on Griffin's part, including a statement that he "agree[d] to produce copies of documents as related to this litigation and to keep the client fully informed."

The Fee Agreement was accompanied by an "Explanation of Contract and Letter Agreement" that summarized its terms. The letter stated that the Fee Agreement related only to Schlein's divorce case and that "[t]he retainer is set at an amount that it is anticipated that no additional fees will be charged." The letter further stated that Griffin anticipated filing a suit against the builder of an unfinished home located at 1628 Enterprise (the "Enterprise House") in which Schlein, and potentially her ex-husband, would sue for breach of contract. He stated that "[a] separate contract will be drawn for this purpose" and indicated that the contract would be based on a contingency fee with no retainer required. However, the parties never executed any other contracts.

Due to the order of the trial court requiring Schlein to obtain court approval before expending any funds, Schlein was unable to pay Griffin the $35,000 retainer at the time they executed the Fee Agreement. Griffin agreed to represent her without collecting the retainer, and he did not otherwise seek payment from Schlein because of the injunction.

5

Griffin provided legal services to Schlein in connection with her divorce proceedings from the end of 2009 until October 2011. Among other actions, he conducted discovery, filed multiple motions and pleadings, filed and litigated a mandamus and sought other extraordinary relief on her behalf, conducted a multi-day trial, and handled issues arising in the proceeding following the trial. Griffin also provided legal services to Schlein against the builder of the Enterprise House, which was damaged during Hurricane Ike ("the builder suit"). He also advised her regarding a tax problem with the Enterprise House and at one point conducted negotiations between Schlein and the taxing authority. Griffin represented Schlein in a criminal case in which she was charged with making a terroristic threat against her ex-husband, obtained a dismissal of the charges, and filed a motion to expunge the arrest record. And Griffin provided legal representation with regard to a lien that was placed on the Enterprise House either during or after the divorce proceeding that placed a cloud on Schlein's title to the property.

In connection with the legal issues in the divorce and with the Enterprise House, Schlein asked Griffin to store some imported Peruvian tile in his warehouse. She was concerned that either her ex-husband or the builder, or someone associated with her ex-husband, would steal the tile. Griffin agreed and placed the tile in his warehouse. The divorce case was tried in May and June of 2011. The family court signed Schlein's Final Decree of Divorce on October 24,

2011. After the divorce case was resolved, the trial court entered an order releasing the injunction on Schlein accessing her separate property to pay for attorney's fees.

On October 28, 2011, Schlein and Griffin met at Griffin's office, but they disagree about what occurred at that meeting. Schlein asserted that she arrived at Griffin's office prepared to deliver him a check for $35,000, at which point Griffin presented her, for the first time, with an invoice for his legal services dated August 5, 2011. According to the invoice, Schlein's total attorney's fees owed to Griffin for his work in her divorce suit were $110,524.29. This bill also stated that it only contained fees relating to Schlein's divorce and that Griffin had not billed Schlein for the other legal matters he had worked on for her. It also stated that he had billed Schlein at a reduced rate of $250 per hour. Griffin testified that Schlein had already been sent the bill prior to this meeting and that she refused to pay the full fee during their meeting on October 28.

On October 29, 2011, Griffin sent Schlein a notice of the termination of his services for non-payment of fees via email correspondence. In the letter, Griffin demanded a payment of $95,000 by Tuesday, November 1, 2011. Griffin notified Schlein that, should she refuse to pay the $95,000, she would incur additional fees and costs and that he would potentially take the following actions: (1) file a motion to the family court to set aside her verdict in the divorce case; (2) retain and secure

her Peruvian tile at his warehouse until the family court ruled on his motion;[1] (3) file a lawsuit against her in order to recover the attorney's fees and costs owed by her; and (4) file motions to withdraw representation from the pending cases he was working on for her. Additionally, Griffin notified Schlein that her client file would be ready for pick up on December 1, 2011, and that it would be her responsibility to arrange for a vehicle that would be able to carry about thirty boxes worth of materials in one trip. The parties disagree about what happened following Griffin's sending of this letter. Schlein argues that she went on two separate occasions to retrieve her client files from Griffin and was never provided the files, and she asserted that, as a result of her missing client files, a house awarded to her in the divorce proceeding was foreclosed upon. Griffin disputed this and provided testimony from his office staff that Schlein eventually did pick up the files.

The family court granted Griffin's motion to withdraw, and Schlein never made any payments for Griffin's legal services. On March 14, 2013, Griffin filed this suit for the fees Schlein owed him. In his original petition, Griffin alleged claims for breach of contract arising out the Fee Agreement and a contingency fee agreement in the builder suit, quantum meruit, unjust enrichment, fraud, and violations of the Theft Liability Act. He eventually amended his petition to drop all

---

[1] There was some dispute at trial regarding which motion this referred to. Griffin testified that this referred to his motion to withdraw from representing Schlein. Schlein understood it to mean the threatened motion to vacate, but no such motion was ever filed.

of the claims except for his claim that Schlein had breached the Fee Agreement.

Schlein answered and filed a counter claim alleging breach of contract, legal malpractice, breach of fiduciary duty, and fraud. Schlein eventually amended her counter-claim to add a cause of action for violations of the DTPA. Schlein also filed a verified pleading in which she complained that Griffin lacked the legal capacity to bring suit, and she filed a traditional motion for partial summary judgment asking the court to dismiss Griffin's breach of contract claim on the ground that Griffin lacked capacity to bring suit. The trial court denied Schlein's motion.

In response to Schlein's challenges to his capacity, Griffin filed an amended petition alleging that "A Griffin Lawyers" was an assumed name of Anthony P. Griffin and that he was the sole owner of Anthony P. Griffin, Inc., a corporation that was no longer in good standing.

The case went to trial on Griffin's claim that Schlein breached the Fee Agreement and Schlein's claims of breach of contract, fraud, breach of fiduciary duty, and violations of the DTPA. Griffin presented evidence of the circumstances surrounding his legal representation of Schlein, the services he performed pursuant to that representation, and the billing for his services. Schlein presented evidence regarding her allegations that Griffin breached his fiduciary duties and provisions of the DTPA by failing to keep her adequately informed of the progress of her case

9

and her mounting legal fees, that he improperly retained her Peruvian tile and her case file, that he improperly failed to continue in representing her and made improper threats, such as threating to file a motion to vacate the divorce decree, and that he charged her an unconscionable fee in violation of his fiduciary duties and his Fee Agreement with her.

The jury found that Schlein breached the Fee Agreement and that Griffin did not, and it determined that Griffin was entitled to $105,750 in damages, representing the attorney's fees Schlein incurred during her divorce proceedings, plus $22,399.29 in damages relating to costs incurred in the divorce case. The jury also determined that Griffin was entitled to $62,836 in attorney's fees plus conditional fees in the event of an appeal for the instant suit. The jury found that Griffin did not commit fraud or breach his fiduciary duties. However, the jury also found that he engaged in an unconscionable action or course of action in violation of the DTPA, but it found zero actual damages arising from that breach and $5,000 in additional damages.

Following the trial, Griffin moved for entry of judgment on the jury's verdict except that he sought a JNOV on the jury's findings that he breached the DTPA and was liable for additional damages. The trial court denied Griffin's motion for JNOV and entered judgment on the jury's verdict, awarding Griffin $128,149.29 in damages and attorney's fees and awarding Schlein $5,000 on her DTPA claim.

10

Schlein moved for a new trial, which the trial court denied. Both parties filed notices of appeal.

## Capacity to Maintain Suit

In her first issue, Schlein argues that the trial court erred by permitting Griffin to enforce the Fee Agreement in his individual capacity.

### A. Relevant Facts

Griffin and Schlein entered into the Fee Agreement in November 2009. The Fee Agreement stated that the parties to the agreement were "A Griffin Lawyers/Anthony P. Griffin, Inc." and Barbara Regina Schlein. However, the corporate entity "Anthony P. Griffin, Inc., a Professional Corporation" became inactive as of 1998 according to records from the Secretary of State, and thus the corporate entity did not exist at the time Griffin and Schlein executed the Fee Agreement. Schlein signed the Fee Agreement in her individual capacity, while Griffin signed as "Anthony P. Griffin" for "A Griffin Lawyers."

Griffin originally filed suit against Schlein in his individual capacity. Schlein asserted in a verified pleading—her first amended answer—that Griffin "lack[ed] legal capacity to sue" her and that he was "not entitled to recover in the capacity in which he sue[d]." She reasserted these arguments, arguing that Griffin lacked standing and capacity to maintain his suit against her, in her response to his motion for summary judgment and in her own motion for partial summary

11

judgment on the issue of capacity. She presented discovery responses and deposition testimony from Griffin establishing that Anthony P. Griffin, Inc. was not a party to the suit and that, as part of a bankruptcy proceeding in 2012, Anthony P. Griffin, Inc. was associated with the assumed name "A Griffin Lawyers."

Griffin filed a Second Amended Petition on February 24, 2014, asserting that this lawsuit was "brought to collect on outstanding debts due and owing to Anthony P. Griffin, as owner of the assumed name of A Griffin Lawyers (an assumed name for Anthony P. Griffin), and sole owner of a former corporate legal entity known as Anthony P. Griffin, Inc. (defunct corporation, not good standing)." At the same time, in connection with his response to Schlein's motion for summary judgment, Griffin filed an affidavit in which he averred:

> I am the sole owner of the assets and debts of Anthony P. Griffin, Inc., and I have the authority to collect the debts of such corporation. I also affirm that [at] all times material to the contract, A Griffin Lawyers was the assumed name of Anthony P. Griffin, individually, and any assets and debts are owned by Anthony P. Griffin. A Griffin Lawyers is not the assumed name for Anthony P. Griffin, Inc. The corporate entity is defunct save for taxation purposes and the payment of debts. In addition, affiant swears and confirms the bankruptcy petition filed by Anthony P. Griffin, Inc. was voluntarily dismissed and accepted by the bankruptcy court.

In her reply to Griffin's response to her motion for summary judgment, Schlein objected to this response and argued it was untimely. She also argued that Griffin's response "focuse[d] only on whether he has standing to maintain his

lawsuit" and that "capacity is separate and distinct from standing." She asserted that Griffin's affidavit was conclusory in nature, provided no factual support for his conclusion that he was authorized to take an action on behalf of the defunct corporation, and was a "sham" affidavit that contradicted his previous deposition testimony. Schlein also stated in her reply that she was entitled to summary judgment on Griffin's claims for breach of the Fee Agreement because he had not complied with Business and Commerce Code Chapter 71. However, Schlein did not file a verified plea in abatement challenging Griffin's failure to comply with Chapter 71.

## B.    Law of Capacity

Capacity is a party's legal authority to go into court to prosecute or defend a suit. *See Nootsie, Ltd. v. Williamson Cty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996); *Tandan v. Affordable Power, L.P.*, 377 S.W.3d 889, 893 (Tex. App.—Houston [14th Dist.] 2012, no pet.).   While standing is a jurisdictional issue, capacity is not. *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 56 (Tex. 2003); *Tandan*, 377 S.W.3d at 893; *see also* TEX. R. CIV. P. 93(1)–(2) (requiring verified pleadings to challenge capacity).

Although lawyers and courts occasionally state informally that an entity has no "standing" to enforce a contract if that entity is not a party to the contract or a third-party beneficiary of it, such an entity's inability to sue goes to the merits and

does not deprive courts of jurisdiction. *See MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651–52, 654 (Tex. 1999) (concluding that entity was neither party nor third-party beneficiary entitled to sue on contract and reversing and rendering take-nothing judgment on merits of contract claim rather than dismissing for lack of jurisdiction); *State Farm Lloyds Ins. Co. v. Maldonado*, 963 S.W.2d 38, 40–42 (Tex. 1998) (same); *Rivera v. S. Green Ltd. P'ship*, 208 S.W.3d 12, 22–23 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (affirming summary judgment dismissing contract claim on merits because plaintiff was neither party nor third-party beneficiary entitled to sue on contract). Thus, Texas courts have held that "a challenge to a party's privity of contract is a challenge to capacity, not standing." *John C. Flood of DC, Inc. v. SuperMedia, L.L.C.*, 408 S.W.3d 645, 651 (Tex. App.—Dallas 2013, pet. denied). Privity is established by proof that the defendant was a party to an enforceable contract with either the plaintiff or a party who assigned its cause of action to the plaintiff. *Brown v. Mesa Distribs, Inc.*, 414 S.W.3d 279, 284–85 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *OAIC Commercial Assets, L.L.C. v. Stonegate Vill. L.P.*, 234 S.W.3d 726, 738 (Tex. App.—Dallas 2007, pet. denied).

Texas courts have entertained challenges to privity of contract in the form of motions for summary judgment, as Schlein did here. *See, e.g.*, *Rivera*, 208 S.W.3d at 22–23. We review a trial court's ruling on a summary judgment motion de novo.

*Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). To prevail on a traditional summary judgment motion, the movant bears the burden of proving that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

Whether a party has filed the requisite assumed-name certificate to bring suit in a Texas court also raises an issue of capacity. *See Sibley*, 111 S.W.3d at 55–56. Texas Rule of Civil Procedure 93(2) requires that when a party claims that her opponent is not entitled to recover in the capacity in which he sues, she must do so through a verified pleading. TEX. R. CIV. P. 93(2); *Sibley*, 111 S.W.3d at 56 ("When capacity is contested, Rule 93 requires that a verified plea be filed unless the truth of the matter appears of record.") (citing *Pledger v. Schoellkopf*, 762 S.W.2d 145, 146 (Tex. 1988)). "An argument that an opposing party does not have the capacity to participate in a suit can be waived by a party's failure to properly raise the issue in the trial court." *Sibley*, 111 S.W.3d at 56 (citing *Nootsie, Ltd.*, 925 S.W.2d at 662).

Under Texas Business and Commerce Code section 71.051:

A person must file a certificate under this subchapter if the person regularly conducts business or renders a professional service in this state under an assumed name other than as a corporation, limited partnership, limited liability partnership, limited liability company or foreign filing entity.

15

TEX. BUS. & COM. CODE ANN. § 71.051 (Vernon 2015).

While failure to register an assumed name does not impair the validity of any contract, it does affect the ability of a party to maintain a cause of action when that party has brought suit under an assumed name not registered with the Secretary of State. *Fogal v. Stature Constr., Inc.,* 294 S.W.3d 708, 717 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). According to Business and Commerce Code section 71.201,

> A person's failure to comply with this chapter does not impair the validity of any contract or act by the person or prevent the person from defending any action or proceeding in any court of this state, but the person may not maintain in a court of this state an action or proceeding arising out of a contract or act in which an assumed name was used until an original, new, or renewed certificate has been filed as required by this chapter.

TEX. BUS. & COM. CODE ANN. § 71.201 (Vernon 2015).

Thus, Schlein was required to challenge Griffin's capacity to maintain the suit by raising the argument in a verified plea in abatement. *See Sibley*, 111 S.W.3d at 56; *Mercure Co., N.V. v. Rowland*, 715 S.W.2d 677, 680 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). A plea in abatement not relating to matters of jurisdiction must be urged before the trial on the merits begins; otherwise it is waived. *See* TEX. R. CIV. P. 175.

**C.      Analysis**

Schlein argues on appeal that Griffin has not brought forward sufficient evidence to demonstrate his capacity to sue and that he "produced no assumed-name certificate filed with any governmental agency." Thus, she argues that the trial court should have granted her motion for summary judgment on this issue of capacity and that the trial court "thwarted [her] efforts to raise the issue during trial," resulting in the rendition of an improper verdict.

Schlein filed a verified pleading asserting generally that Griffin "lack[ed] legal capacity to sue" her and that he was "not entitled to recover in the capacity in which he sue[d]," and she moved for summary judgment on the basis that Griffin had not established privity of contract necessary to maintain his suit to enforce the Fee Agreement. Griffin was then required to prove that he was entitled to recover in the capacity in which he sued. We conclude that Griffin met this burden.

The record demonstrates that at the time Schlein and Griffin entered into the Fee Agreement, the corporate entity was already defunct. Because "Anthony P. Griffin, Inc." was not a valid legal entity capable of entering an agreement in 2009, to the extent Griffin's signature on the Fee Agreement purported to bind the corporate entity, he made himself personally liable under the agreement. *See Kahn v. Imperial Airport, L.P.*, 308 S.W.3d 432, 438–39 (Tex. App.—Dallas 2010, no pet.). Griffin, as the sole principal of the defunct corporation, also provided an

17

affidavit stating that he was authorized to collect the debts of the corporation and that "A Griffin Lawyers" was his assumed name and was not associated with "Anthony P. Griffin, Inc." Furthermore, the record demonstrated that Griffin was the professional with whom Schlein contracted and that he is the person who performed the legal services that were the subject of the contract. Given these facts, we conclude that privity exists between Schlein and Griffin in his individual capacity with respect to the Fee Agreement. *See Brown*, 414 S.W.3d at 284–85; *OAIC Commercial Assets, L.L.C.*, 234 S.W.3d at 738.

We further conclude that Griffin had capacity to maintain the suit in that he had legal authority to go into court and prosecute a suit alleging that he had not been paid for legal services rendered pursuant to the Fee Agreement that he signed as Anthony P. Griffin on behalf of "A Griffin Lawyers." *See Nootsie, Ltd.* 925 S.W.2d at 661; *Tandan*, 377 S.W.3d at 893. Because we conclude as a matter of law that Griffin was in privity of contract with Schlein under the Fee Agreement, we conclude that the trial court did not err in denying Schlein's motion for summary judgment or other complaints about Griffin's capacity. *See* TEX. R. CIV. P. 166a(c); *Fielding*, 289 S.W.3d at 848.

To the extent that Schlein challenges Griffin's capacity to maintain suit in the name of his unregistered, assumed name of "A Griffin Lawyers," we observe that she failed to file a verified plea in abatement prior to trial challenging his

18

failure to file the certificate, as required to challenge his failure to comply with Business and Commerce Code Chapter 71. *See* TEX. R. CIV. P. 93(2); *Sibley*, 111 S.W.3d at 56 ("When capacity is contested, Rule 93 requires that a verified plea be filed unless the truth of the matter appears of record."). Failure to file the assumed-name certificate did not impair the validity of the Fee Agreement or Griffin's claim that Schlein breached that agreement. *See* TEX. BUS. & COM. CODE ANN. § 71.201. By failing to file a verified plea in abatement, Schlein waived this complaint. *See Sibley*, 111 S.W.3d at 56.

We overrule Schlein's first issue.

## Evidentiary Rulings

In her second, third, sixth, and eighth issues, Schlein complains of various evidentiary rulings.

### A. Standard of Review

The admission and exclusion of evidence, including expert testimony, is committed to the trial court's sound discretion. *See Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000). To establish reversible error based on the erroneous exclusion of evidence, the complaining party must prove three things: (1) the trial court erroneously excluded the evidence; (2) the excluded evidence was controlling on a material issue and not cumulative of other evidence; and (3) the error probably caused the rendition of an improper judgment. *Id.*; *Coterill–*

19

*Jenkins v. Tex. Med. Ass'n Health Care Liab. Claim Trust*, 383 S.W.3d 581, 593 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *see* TEX. R. APP. P. 44.1. "[A] successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted." *Able*, 35 S.W.3d at 617. In determining if the exclusion was harmful, we review the entire record. *Id.*

**B.      Evidence of Grievances and Lawsuits Filed Against Griffin**

In her second issue, Schlein argues that the trial court erred in refusing to admit evidence of multiple grievances and lawsuits filed against Griffin by former clients.

*1.      Relevant facts*

Schlein contended, in connection with several of her counter-claims, that Griffin failed to keep her informed of the progress of her case and that fee collection was unconscionable. Griffin testified that it is his practice to send copies of everything he receives related to the case to his clients and that, when he generates a letter or other item relating to the case, he likewise sends a copy to the client. His sister, who served as his paralegal and office assistant, testified that the practice of the office is to send the client every piece of paper that goes out for the entire duration of the representation and that Griffin sent Schlein those materials. Griffin also presented a series of letters from his firm's network system that he

20

testified provided such communication to Schlein in the course of his representation of her.

Schlein then sought to introduce evidence of thirty-two grievances and lawsuits filed against Griffin between January 1, 2009, and the time of trial. All of these grievances made similar complaints to those raised by Schlein in this case—that Griffin failed to keep them reasonably informed regarding their cases or they were dissatisfied with his fee. Schlein acknowledged that five of the grievances were final, ten were pending, and the remainder had been dismissed by the State Bar disciplinary committee. The trial court signed an order allowing Schlein to present evidence of the five final grievances but rejecting her request to admit evidence of the pending or dismissed grievances. Subsequently, the trial court excluded one of the five grievances admitted pursuant to its order on the basis of Griffin's testimony that an appeal in that case was pending. Ultimately, Schlein was permitted to question Griffin and other witnesses regarding those final grievances.

2.    *Analysis*

Schlein complains of the trial court's ruling on the admissibility of the grievances and lawsuits. She argues that all thirty-two grievances and lawsuits were admissible to rebut Griffin's testimony about the habit or routine of his office in communicating with clients and in rebutting the presumption that he acted in

accordance with his habit or routine in communicating with Schlein. *See* TEX. R. EVID. 406. She also argues that the grievances and lawsuits were admissible "similar happenings" evidence. *See* TEX. R. EVID. 401. Finally, she asserts the grievances were relevant to her exemplary damages.

Schlein has failed to establish reversible error relating to the admission of the grievances and lawsuits. Assuming without deciding that the trial court erred in excluding the evidence of the pending and dismissed grievances, Schlein has failed to demonstrate that the excluded grievances and lawsuits were not cumulative of the grievances that the trial court admitted into evidence. *See Able*, 35 S.W.3d at 617; *Coterill–Jenkins*, 383 S.W.3d at 593. She argues only that the "sheer number" of complaints was relevant to combat the impression created by Griffin's own testimony and the copies of letters he testified that he sent her, but she was able to present evidence of four final grievances to address Griffin's contention.

Schlein cites cases such as *Sturges v. Wal-Mart Stores, Inc.*, 39 S.W.3d 608 (Tex. App.—Beaumont 1998), *reversed on other grounds*, 52 S.W.3d 711 (Tex. 2001), and *Durbin v. Dal-Briar Corp.*, 871 S.W.2d 263 (Tex. App.—El Paso 1994, writ denied), *overruled in part on other grounds*, *Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362 (Tex. 2000). Those cases are distinguishable from this case because they involved the complete exclusion of evidence. *See Sturges*, 39 S.W.3d at 613–14 (concluding that trial court erred in excluding evidence of five

prior judgments and litigation relevant to exemplary damages calculation); *Durbin*, 871 S.W.2d at 269 (holding that trial court abused its discretion by excluding evidence of other retaliatory acts by corporation in wrongful discharge case where disputed evidence involved same supervisory personnel, workplace, and pattern of conduct that motivated plaintiff's discharge).

Schlein, by contrast, was permitted to introduce evidence of some of the grievances. Schlein's argument is insufficient to show that the admission of evidence of only four of the grievances, as opposed to all thirty-two, probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1; *Able*, 35 S.W.3d at 617.

We overrule Schlein's second issue.

## C. Undisclosed Rebuttal Witnesses

In her third issue, Schlein argues that the trial court erred in allowing Griffin to call undisclosed character witnesses on rebuttal.

### 1. Relevant facts

Once the trial court ruled that Schlein could present evidence of four of the grievances, Griffin argued that he should be permitted to call rebuttal witnesses to address that evidence. He argued that Schlein was offering evidence of the grievances "to show habits, scheme, intent" regarding clients who were discontented with his performance, and thus he needed to call clients from the

relevant time period who would testify that it was not his "habit" or "scheme" to leave clients uninformed regarding their case.

Schlein argued that Griffin had not disclosed any such witnesses even "knowing that this was going to be an issue or at least potentially could be an issue at this trial." Griffin's attorney responded that she had anticipated Schlein's evidence that Griffin breached his fiduciary duty by failing to keep her reasonably informed, but she never thought that evidence of the grievances would be admitted and did not anticipate the need to rebut that evidence. The trial court determined it would allow Griffin to call a limited number of rebuttal witnesses, and it stated that Griffin needed to inform the court "at some point" of the number and identity of the witnesses he intended to call.

Griffin subsequently called Mike Landolt as a rebuttal witness, and the following exchange occurred:

[Schlein]: I object. He's not disclosed, et cetera; but I understand he's going to be permitted to testify.

[Court]: Well, I haven't heard the objections until just now.

[Schlein]: Just I don't know who he is.

[Court]: Okay. Well, he's a rebuttal witness so there's no duty to disclose if he's a rebuttal witness.

[Schlein]: So long as reasonably anticipated.

[Court]: Correct.

[Schlein]: Which I believe that it should be.

24

[Court]: All right. Sir, you can come on forward.

Landolt testified that Griffin represented him in a dispute against his homeowner's association and that he was pleased with Griffin's work. Landolt stated that Griffin kept him informed of the progress of his case by phone and e-mail and that he followed up with correspondence in the mail. He also stated that he had paid Griffin approximately $70,000 in fees and that he thought this amount was fair.

Griffin also called the following witnesses: Mary Luna testified that she was satisfied with Griffin's representation of her in a property dispute and that in her experience he was "honest and fair and responsible and met his obligations and I paid him his money"; Joanna Mora testified that Griffin represented her in a divorce proceeding, that she was satisfied with the results, and that Griffin was responsible, dedicated, told her everything to expect during the trial, and sent voluminous letters communicating with her; and Lloyd Gilliam testified that Griffin represented him and twenty-eight other families in a lawsuit against his local school district, that they were satisfied with the work Griffin had performed for them, that he trusted Griffin, and that he had "files of documents" he had received from Griffin in the course of the litigation.

*2. Law of undisclosed rebuttal witnesses*

Texas Rule of Civil Procedure 192.3 provides that a party may obtain discovery of the name, address, and telephone number of any person who is expected to testify at trial, and Rule 193.6 provides for the exclusion of any evidence or testimony by a witness who was not timely disclosed. *See* TEX. R. CIV. P. 192.3(d), 193.6(a). However, Rule 192.3(d) also expressly states that it "does not apply to rebuttal or impeaching witnesses the necessity of whose testimony cannot reasonably be anticipated before trial." TEX. R. CIV. P. 192.3(d).

The burden of establishing the admissibility of the testimony rests on the parting seeking to call the undisclosed witness, and the record must demonstrate good cause. *See* TEX. R. CIV. P. 192.(d); *id.* 193.6(b); *Aluminum Co. of Am. v. Bullock*, 870 S.W.2d 2, 4 (Tex. 1994) (holding under prior rule that party met its burden of showing good cause for failure to identify rebuttal expert witness due to material and unanticipated change in testimony of opposing expert). A rebuttal witness still has to be disclosed if the need to call the witness reasonably should have been anticipated. *See Moore v. Mem'l Hermann Hosp. Sys., Inc.*, 140 S.W.3d 870, 875 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

*3. Analysis*

Schlein argues that Griffin knew that his practices regarding keeping clients informed would be at issue in the trial because she asserted a claim for breach of

fiduciary duty for failing to keep her informed of matters material to his representation of her. She also asserts that Griffin knew she intended to admit evidence of his grievances and lawsuits because "she fought so hard to obtain them" during discovery. Schlein also argues that she sought the disclosure of the identity of any character witnesses.

However, Griffin argued that the trial court's decision to admit evidence of some of the grievances filed against him by former clients was a surprise and that he never anticipated that such evidence would have been admissible. He believed the issue of whether he kept Schlein informed was a separate question from whether he generally did so with all of his clients, and thus he did not anticipate having to rebut evidence that he failed to communicate with other clients besides Schlein.

Thus, the record contains at least some indication that Griffin needed to call the witnesses to rebut unanticipated arguments raised by Schlein during trial. *See* TEX. R. CIV. P. 192.3(d); *Bullock*, 870 S.W.2d at 4; *Moore*, 140 S.W.3d at 875. We cannot conclude that the trial court abused its discretion in allowing this testimony.

We overrule Schlein's third issue.

**D.   Griffin's Original Petition**

In her sixth issue, Schlein argues that the trial court erred in excluding Griffin's original petition from admission into evidence at trial. She argues that the

27

original petition established as a matter of law that Griffin breached his fiduciary duty because he "sought recovery for a contract which never existed—a contingent-fee agreement in the Builder Case" and "disclosed confidences revealed by Schlein within the context of the representation in the underlying divorce case." Schlein argues that the trial court erred in excluding the original petition and that its exclusion damaged her ability to prosecute her breach of fiduciary duty claim and to establish exemplary damages.

Generally, an opposing party's pleadings do not constitute evidence supporting the underlying claims in the case, and Schlein does not argue on appeal that any specific factual statements in Griffin's superseded original petition should be considered judicial admissions. *See, e.g.*, *Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989) ("[A] party relying upon an opponent's pleadings as judicial admissions of fact must protect the record by objecting to the introduction of controverting evidence and to the submission of any issue bearing on the facts admitted."); *Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 356–57 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (stating that party's pleadings generally do not constitute summary judgment evidence, even if sworn or verified, but party may plead itself out of court when it pleads facts that affirmatively negate its cause of action). We conclude that the trial court did not abuse its discretion in excluding Griffin's superseded original petition from admission into evidence.

We overrule Schlein's sixth issue.

**E.   Testimony of Griffin's Expert Witness on Reasonableness of Fees**

In her eighth issue, Schlein argues that the trial court erred in allowing Genevieve McGarvey, Griffin's expert witness, to testify that the fees Griffin charged Schlein in the underlying divorce case were reasonable and necessary.

*1.   Relevant facts*

The last discovery and docket control order in this case was the trial court's amended discovery order, signed September 23, 2013, which provided a deadline of September 30, 2013, for the designation of experts for the plaintiff and October 30, 2013, for the designation of all other experts. This docket control order set the case for trial on March 24, 2014. At an October 3, 2013 hearing, the trial court extended Griffin's deadline to designate his experts and provide the required reports until October 31, 2013.

On October 8, 2013, Griffin identified McGarvey as an expert witness in his amended discovery, stating that she "can provide testimony with regards to work performed on behalf of Plaintiff and the issue of reasonable and necessary attorney's fees in context of the breach of contract and the reasonable and necessary attorney's fees for the representation of Defendant." This disclosure identified "billing documents previously produced to client" as items reviewed by McGarvey in anticipation of her testimony, and he also attached her resume to this

disclosure.[2] Subsequently, Griffin updated his discovery responses on April 7, 2014, including a resume and expert report from McGarvey.

The trial began on May 7, 2014. Schlein objected to Griffin's calling McGarvey to testify on the basis that Griffin had failed to make adequate disclosures and had failed to comply with the rules. Griffin asserted that he had complied with the rules. The trial court allowed McGarvey to testify after giving Schlein an opportunity to depose her prior to her testifiying, and the parties entered into a stipulation limiting the scope of McGarvey's testimony.

Griffin himself testified regarding the work he performed on Schlein's behalf and the fees due him in the underlying attorney's fee dispute. McGarvey then testified that she was a partner at a law firm in Galveston and that approximately twenty-five percent of her practice related to family law. She testified that she had reviewed Griffin's billing statement and "the case summary that's on the docket in the computer" regarding his representation of Schlein in the divorce proceeding. She testified that she believed the hourly rate charged by Griffin in Schlein's case—$300 per hour—was reasonable. She also testified that the amount of time reflected in his bill to Schlein was reasonable and necessary for the circumstances of the case and work involved.

---

[2] On Schlein's motion, the trial court struck McGarvey as an expert witness. It subsequently reconsidered its ruling and reinstated her as an expert.

At one point, Schlein's attorney objected to the scope of McGarvey's testimony, asserting that "[t]here's a stipulation amongst the parties that's on the record as to what the limits of her testimony are going to be; and she's not permitted to testify outside the report, which identifies her resume, the case summary, the billing statement, and the contract of employment as the four things that she's looked at in this case." The trial court sustained this objection, stating "All right. We have to keep it limited to those four things." Schlein objected three additional times to testimony outside the scope of McGarvey's report, and the trial court again sustained each objection.

### 2. *Analysis*

Schlein argues that the trial court ignored the rules governing expert witnesses and its own discovery control order in allowing McGarvey to testify. However, a court may modify a discovery control plan at any time and must do so when the interest of justice requires it. TEX. R. CIV. P. 190.5. Unless modification is expressly prohibited, the procedures and limitations set forth in the rules pertaining to discovery also may be modified in any suit by the agreement of the parties or by court order for good cause. TEX. R. CIV. P. 191.1. Here, the trial court allowed several modifications of the discovery deadlines, and Griffin disclosed McGarvey by the extended deadline as an expert who would testify to the reasonable and necessary fees based on his billing statements. The trial court also

allowed Griffin to amend his discovery responses to include McGarvey's expert report and impliedly determined that doing so thirty days before trial was adequate. *See* TEX. R. CIV. P. 193.5(b) ("An amended or supplemental response must be made reasonably promptly after the party discovers the necessity for such a response. Except as otherwise provided by these rules, it is presumed that an amended or supplemental response made less than 30 days before trial was not made reasonably promptly."). Schlein has not argued or presented any evidence that these modifications by the trial court were expressly prohibited. Thus, we conclude that the trial court did not abuse its discretion in this regard.

Schlein also asserts that Griffin never showed good cause or established a lack of surprise or prejudice that would permit the court to excuse his failure to comply with the rules. An expert is not permitted to testify to *undisclosed* opinions at trial without a showing that there was good cause for the failure to timely make, amend, or supplement the disclosures or that the failure to supplement will not unfairly surprise or prejudice the other party. *See Llanes v. Davila*, 133 S.W.3d 635, 638–39 (Tex. App.—Corpus Christi 2003, pet. denied) (citing TEX. R. CIV. P. 193.6); *VingCard A.S. v. Merrimac Hosp. Sys., Inc.*, 59 S.W.3d 847, 856 (Tex. App.—Fort Worth 2001, pet. denied); *see also* TEX. R. CIV. P. 193.5 (governing amending or supplementing responses to written discovery). However, the record

does not indicate that McGarvey was allowed to testify to undisclosed opinions in this case.

Griffin timely disclosed that McGarvey would testify "with regards to work performed . . . and the issue of reasonable and necessary attorney's fees in context of the breach of contract and the reasonable and necessary attorney's fees for the representation of [Schlein]" and that her testimony was based on billing statements that had been provided to Schlein in advance of trial. Griffin also amended his discovery responses thirty days before the trial began to provide McGarvey's expert report. As demonstrated by the trial court's sustaining Schlein's repeated objections to any testimony that fell outside the scope of the disclosed and agreed-upon grounds for McGarvey's testimony, McGarvey testified only in conformity with the disclosures—that she was familiar with Griffin's experience and reputation and that the hourly rate and total number of hours billed to Schlein were reasonable and necessary in her experience as a partner in a local law firm who also practiced family law.

We conclude that the trial court did not abuse its discretion in permitting McGarvey's testimony.

We overrule Schlein's eighth issue.

## Charge Error

In her fourth issue, Schlein argues that the trial court erred in charging the jury on her breach of fiduciary duty claim. Specifically, she argues that the jury instruction on this issue improperly placed the burden on her to establish that Griffin breached his fiduciary duties, rather than requiring Griffin to establish that he complied with his fiduciary duty.

*1.     Relevant facts*

The jury charge on Schlein's breach of fiduciary duty claim stated:

Did Anthony Griffin fail to comply with his fiduciary duty to Barbara Schlein?

As Barbara Schlein's attorney, Anthony Griffin owed Barbara Schlein a fiduciary duty.

To prove Anthony Griffin failed to comply with his fiduciary duty, Barbara Schlein must show:

> a. the transactions and actions in question were not fair and equitable to Barbara Schlein; or
>
> b. Anthony Griffin did not make reasonable use of the confidence that Barbara Schlein placed in him; or
>
> c. Anthony Griffin failed to act in the utmost good faith or exercise the most scrupulous honesty toward Barbara Schlein; or
>
> d. Anthony Griffin placed his own interests before Barbara Schlein's, used the advantage of his position to gain a benefit for himself at the expense of Barbara Schlein, or placed himself in a position where his self-interest might conflict with his obligations as a fiduciary; or

34

> e. Anthony Griffin failed to fully and fairly disclose all important information to Barbara Schlein concerning the transactions.

The jury answered, "No," in response to this question.

Schlein sought to submit a question placing the burden on Griffin to prove that he complied with his fiduciary duties. The trial court refused her question and overruled her objection to the charge.

### 2. *Standard of Review*

We review a trial court's decision to submit or refuse a particular instruction for an abuse of discretion. *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000). We accord the trial court broad discretion so long as the charge is legally correct. *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 664 (Tex. 1999).

In addition to the duty of ordinary care, an attorney owes fiduciary duties to his client as a matter of law. *Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 428–29 (Tex. App.—Austin 2009, no pet.) (citing *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988)). "The term 'fiduciary' refers to integrity and fidelity; thus, 'the attorney-client relationship is one of the most abundant good faith, requiring absolute perfect candor, openness and honesty, and the absence of any concealment or deception.'" *Id.* at 429 (quoting *Goffney v. Rabson*, 56 S.W.3d 186, 193 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)).

Attorneys must render a full and fair disclosure of facts material to the client's representation. *Willis*, 760 S.W.2d at 645; *Beck*, 284 S.W.3d at 429.

To prevail on a breach-of-fiduciary-duty claim, the claimant must prove (1) the existence of the fiduciary relationship; and (2) a breach of that duty by the attorney defendant (3) that causes (4) damages to the plaintiff. *Beck*, 284 S.W.3d at 429. Thus, generally, the burden of proving that an attorney breached his fiduciary duties to his client rests on the party asserting the claim. *See id.*; *see also Frankoff v. Norman*, 448 S.W.3d 75, 85 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (holding that plaintiff bears burden of proof as to all elements of breach of fiduciary duty claim against attorney).

However, Texas courts apply a presumption of unfairness to transactions between a fiduciary and a party to whom he owes a duty of disclosure. *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co.*, 20 S.W.3d 692, 699 (Tex. 2000) ("Contracts between attorneys and their clients negotiated during the existence of the attorney-client relationship are closely scrutinized. Because the relationship is fiduciary in nature, there is a presumption of unfairness or invalidity attaching to such contracts.") (internal citations omitted); *Lee v. Hasson*, 286 S.W.3d 1, 21 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). Thus, in cases involving such transactions, the profiting fiduciary bears the burden of showing the fairness of the transactions. *Keck, Mahin & Cate*, 20 S.W.3d at 699; *Lee*, 286 S.W.3d at 21 (citing

36

*Collins v. Smith*, 53 S.W.3d 832, 840 (Tex. App.—Houston [1st Dist.] 2001, no pet.)).

3.    *Analysis*

Schlein's allegations that Griffin breached his fiduciary duty to her were based on his general performance as her attorney and were not related to any contract or other transaction entered into between the parties during the existence of their attorney-client relationship. She argues on appeal that her "breach of fiduciary duty allegations against Griffin center on actions *after* the attorney-client relationship arose" and that "Griffin benefitted because he secured a claim [for] over $100,000 in attorney's fees." However, these facts prove only that a fiduciary relationship existed between the parties—they do not demonstrate the existence of some contract or transaction between the parties that would give rise to a presumption of unfairness in the contract. *See Keck, Mahin & Cate*, 20 S.W.3d at 699; *Lee*, 286 S.W.3d at 21.

Because Schlein did not assert any claims or present evidence indicating that Griffin's alleged breaches of fiduciary duty related to a contract or transaction negotiated during the existence of the attorney-client relationship, we conclude that the trial court did not abuse its discretion in submitting the jury charge placing the burden of establishing the elements of her breach of fiduciary duty claim on her. *See Keck, Mahin & Cate*, 20 S.W.3d at 699; *see also Beck*, 284 S.W.3d at 429

(generally, burden of proving that attorney breached his fiduciary duties rests on party asserting that claim); *Frankoff*, 448 S.W.3d at 85 (holding same).

We overrule Schlein's fourth issue.

## Sufficiency of the Evidence

In her fifth, seventh, and ninth issues, Schlein complains of the sufficiency of the evidence.

## A. Standard of Review

In a legal-sufficiency challenge, we consider whether the evidence at trial would enable a reasonable and fair-minded factfinder to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* We will only reverse the judgment if: (1) there is a complete absence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810. The record contains more than a mere scintilla of evidence if reasonable minds could form differing conclusions about a vital fact's existence. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). Conversely, the record is insufficient when the evidence offered to prove a vital fact is so weak as

to do no more than create a mere surmise or suspicion of its existence. *Id.*; *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

In a factual-sufficiency challenge, we consider and weigh all the evidence, and can set aside a verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761–62 (Tex. 2003). We may not substitute our own judgment for that of the factfinder, even if the evidence would support a different result. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). The amount of evidence necessary to affirm the factfinder's judgment is far less than that necessary to reverse its judgment. *GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet*, 61 S.W.3d 599, 616 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

## B.    Jury's Finding on Schlein's Breach of Fiduciary Duty Claim

In her fifth issue, Schlein argues that the evidence was legally and factually insufficient to support the jury's finding that Griffin did not breach his fiduciary duties to Schlein. In her briefing on appeal, Schlein argues that the evidence was insufficient to support the jury's finding based on Griffin's conduct with regard to Peruvian tile that she placed in his care and on Griffin's duty to keep her informed with regard to the billing.

*1.    Relevant facts and law*

The tile in question was imported Peruvian tile that Schlein bought for the Enterprise House and gave to Griffin to store during the pendency of her divorce proceeding. Griffin testified that Schlein asked him to store it because she was concerned that her husband or someone associated with him would try to steal it. The final decree of divorce awarded Schlein the tile as her sole and separate property. The parties provided conflicting testimony regarding disposition of the tile following the resolution of the divorce case. Schlein testified that, although she had not paid Griffin "in cash dollar money," she had paid him in product, stating that Griffin "took the tile as full and final payment when the divorce was over and the final divorce decree was signed."

Griffin testified that he never agreed to accept the tile as payment for his fee. He stored the tile for Schlein at her request and never charged her storage fees. Griffin testified that Schlein was not dissatisfied with his services until the billing dispute arose. On October 29, 2011, the day after Schlein met Griffin at his office, Griffin sent her an e-mail confirming the termination of his representation for nonpayment of fees and stating, "Your statement seeking to pay $50,000 for our work is unacceptable." He demanded payment of $95,000 in attorney's fees and notified her that "[a]ny future action taken will encompass additional fees and costs associated with your non-payment (roughly an additional $75,000)." This e-

40

mail also stated that "[i]f payment is not made, please note we anticipate undertaking the following to protect our interest," including that Griffin would "retain and secure the tile in the warehouse until [a motion filed in the underlying divorce proceeding] is decided by the Court. We will not release any property until after the motion is decided by the Court."

He stated that he never claimed ownership of the tile and that he asked Schlein on more than one occasion, either on the phone or through e-mail, to pick the tile up from his warehouse. He presented a copy of a letter sent to Schlein's new attorneys on December 12, 2012, which was several months prior to the filing of this suit, stating, "Please have your client and/or have someone in your office arrange a time with my office to retrieve the boxes of tiles that are in our warehouse." It was undisputed that the tile remained in Griffin's warehouse as of the time of trial.

Regarding billing, Schlein testified that she believed Griffin was charging her a flat fee of $35,000 for his representation of her during the divorce. She also testified that the Fee Agreement required him to bill her after his fees exceeded the $35,000 retainer, but she never received a bill from Griffin until October 28, 2011, four days after the divorce was resolved. She testified that on that date, she went to Griffin's office to write a check for $35,000 and he presented her with a bill for

approximately $110,000 instead. The bill was "backdated to August 5th," but she stated she never saw a copy of it until her office visit in October.

Griffin testified that he sent her the bill via e-mail and regular mail in August 2011 and that she responded by assuring him that she would pay the fees once the family court released her funds. He introduced a copy of an e-mail from Schlein, dated October 11, 2011, stating in part,

> Anthony, I am so sorry that you haven't been paid, and I thank God every day that you and you[r] staff have stayed with [me]. You are obviously passionate about your job. Now I know why people say the really GOOD things about you that they do. I wish everyone could read this email to see how things really are with this case. The court is bankrupting us even though I have separate property money to live on!!!

Griffin stated that they had "maybe two, three conversations about the bill" between August and October, and she assured him that she intended to pay the bill when her separate funds were available.

Griffin also testified that he and Schlein had discussions about his fees during the course of his representation of her. He testified that although he did not prepare the bill until August 2011, he maintained records of the time he spent on the case and "knew roughly where I was [in terms of time spent on the case] by looking at the billing records and I had conversations with the client and informed the client of where we were." For example, at the time Griffin filed a mandamus to challenge a ruling by the trial court in the divorce proceeding, Griffin discussed

with Schlein that the fees were in excess of the retainer outlined in the Fee Agreement and that he had not anticipated the cost of a mandamus when setting the retainer. He testified, "Every time I had to file an extraordinary relief that conversation took place [telling her] you're far in excess of $35,000. I began to worry about the multiple matters that I was handling for Ms. Schlein and that's when the conversations took place." He stated that each time, she told him not to worry about it and that she would "take care of [him]" when the family court released her funds. Griffin knew that Schlein could not pay him until the trial court in the divorce proceeding released the injunction prohibiting Schlein from using any more assets to pay for attorney's fees.

Schlein's expert on duties owed by lawyers, Lillian Hardwick, testified that Griffin's actions in keeping the tile while waiting for the divorce court to resolve the remaining motion constituted a breach of the duty of safekeeping of a client's property. Hardwick also testified that his providing only a single bill for his services and "fail[ing] to communicate with the client all along that the client was going to be owing more than [the] $35,000 [retainer]" constituted a breach of the duty to keep his client informed.

As discussed above in the section on charge error, the jury was asked whether Griffin failed to comply with his fiduciary duty because "the transactions and actions in question were not fair and equitable," he "did not make reasonable

use of the confidence that Barbara Schlein placed in him," he "failed to act in the utmost good faith or exercise the most scrupulous honesty toward" Schlein, he "placed his own interests before" Schlein's, or he "failed to fully and fairly disclose all important information" to Schlein. The jury answered, "No," in response to this question.

2.   *Analysis*

To prevail on a breach-of-fiduciary-duty claim, the claimant must prove (1) the existence of the fiduciary relationship; and (2) a breach of that duty by the attorney defendant (3) that causes (4) damages to the plaintiff. *Beck*, 284 S.W.3d at 429. Schlein argues that the evidence conclusively established that Griffin breached his fiduciary duty to her with respect to the safekeeping of the valuable tile that she entrusted to his care and with respect to his obligation to keep her informed regarding billing. She points to her expert witness's testimony that Griffin breached his fiduciary duty by storing the tile in his warehouse and then threatening to keep the tile until the trial court heard his motion in the underlying divorce proceeding. She also cites the fact that Griffin still had the tile in his custody at the time of trial. Schlein also argues that Griffin's own testimony regarding his billing practices in her case established that he breached his duty to keep her informed.

However, Griffin and Schlein presented conflicting evidence regarding both the tile and Griffin's efforts to keep Schlein informed of the progress of her case and the fees she was incurring. Griffin himself testified that he stored the tile at Schlein's request, and although he did tell her at one point that he was retaining the tile until the divorce court ruled on his motion to withdraw, he never asserted ownership over the tile, nor did he accept it as payment of the fees. He testified that his office called Schlein on at least one occasion asking her to retrieve the tile, and he produced a copy of a letter sent to her counsel asking them to arrange for the removal of the tile from his warehouse. Griffin never sold the tile and it remained in his warehouse at the time of trial.

Griffin also testified about the unusual situation regarding the payment of his fees in this case. At the time he agreed to represent Schlein, she had already expended approximately $179,000 in fees to pay her four previous lawyers and the family court had enjoined her from using assets to pay any more attorney's fees. Accordingly, Schlein never paid the $35,000 retainer, and Griffin knew he could not be paid until the court approved the amount or released the injunction. Nevertheless, Griffin testified that he kept records of his time throughout his representation of Schlein, that he communicated with her regularly that she was incurring attorney's fees beyond the $35,000 retainer, and that she repeatedly assured him she would pay him when the family court released her funds. He

testified that he mailed her the itemized bill in August 2011 after the conclusion of the trial and that they again discussed payment of his bill. He provided an e-mail from Schlein dated October 11, 2011, in which she praised his work in the case and apologized that she had not yet been able to pay him. He testified that at their meeting on October 28, 2011, she refused to pay his fees. In an e-mail sent the next day, he informed her that her offer of $50,000 was unacceptable and he was seeking $95,000 in fees.

In light of this conflicting evidence, which the jury resolved adversely to Schlein, we hold that Schlein failed to establish as a matter of law that Griffin breached his duties of safekeeping of her property and of keeping her informed of the fees she was incurring. Thus, the evidence is legally sufficient to support the jury's verdict. *See City of Keller*, 168 S.W.3d at 810, 827.

Nor was the jury's finding against the great weight and preponderance of the evidence. Schlein presented expert testimony that Griffin breached his fiduciary duties to her. Schlein herself testified that Griffin kept her tile as payment for the fees and that he refused to return it to her until matters were completely resolved in the underlying divorce. She also testified that Griffin never informed her that he was going to charge anything other than a flat fee of $35,000 and that she was shocked when she received the bill for $110,000 in fees on October 28, 2011.

However, as outlined above, Griffin also presented conflicting evidence that he asked her more than once to retrieve the tile and did not agree to accept it as partial payment of his fees and that he informed her of the nature of the fees she was incurring throughout his representation of her. The jury was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See id.* at 819. Thus, factually sufficient evidence supports the jury's finding on the breach of fiduciary duty claim. *See Jackson*, 116 S.W.3d at 761–62.

We overrule Schlein's fifth issue.

## C.     Reasonableness of the Attorney's Fees in the Divorce Case

In her ninth issue, Schlein argues that McGarvey's testimony was insufficient to demonstrate that the fees charged by Griffin in the divorce case were reasonable and necessary.

### 1.     *Relevant facts*

McGarvey testified that she was a partner at a law firm in Galveston, that approximately twenty-five percent of her practice related to family law, and that she was familiar with reasonable and necessary fees in Galveston County. She testified that she had reviewed Griffin's billing statement, "the case summary that's on the docket in the computer" regarding his representation of Schlein in the divorce proceeding, and other trial documents. McGarvey also testified that she

was familiar with Griffin's reputation in the community as a lawyer, stating that she had worked on cases with Griffin in the past.

She testified that she believed the hourly rate charged by Griffin in Schlein's case—$300 per hour—was reasonable in a case like Schlein's, stating that Griffin was not the first attorney to represent Schlein in the divorce case. She testified that normal fees for a "hotly contested" divorce case would be "between $250 and $450 per hour, sometimes more depending on the attorney." McGarvey believed Griffin's fee of $300 per hour was reasonable and necessary because Griffin "has been licensed for a long period of time" and was "the only attorney that I know working on the file that was licensed before the U.S. Supreme Court" and had experience working on appeals and mandamuses. McGarvey testified that Griffin's "experience in getting a job done quickly would warrant that kind of fee for this type of case."

McGarvey also testified that the amount of time reflected in Griffin's bill to Schlein was reasonable and necessary. She stated that "he did not charge for all of his time, according to his own bill." Griffin himself also testified about the details of his representation of Schlein and introduced evidence of the specific work he did on her behalf in the form of copies of pleadings, letters, and other documents created in the course of his representation and itemized bills indicating the specific work performed.

*2. Analysis*

Schlein complains that McGarvey's testimony was conclusory and insufficient to establish that Griffin's fees were reasonable and necessary. Under a legal-sufficiency analysis, an expert's opinion may constitute no more than a mere scintilla of evidence if the opinion is speculative or conclusory on its face. *See Coastal Transp. Co., Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex. 2004) (considering legal-sufficiency challenge to expert opinion because opinion was alleged to be "conclusory or speculative and therefore non-probative on its face"); *see also Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995) ("When an expert's opinion is based on assumed facts that vary materially from the actual, undisputed facts, the opinion is without probative value and cannot support a verdict or judgment.").

However, McGarvey's opinion was not speculative on its face. She testified that her opinion that the hourly rate and total number of hours charged by Griffin in connection with his representation of Schlein was reasonable and necessary was based on multiple factors. These factors included her own experience and knowledge of the reasonable and customary fees charged in similar cases in Galveston County and Griffin's own experiences and qualifications. She also testified that she considered the amount of time and effort involved in the representation as reflected in the numerous documents she reviewed, and she

49

believed that the number of hours Griffin billed was reasonable given the nature of the case.

Thus, McGarvey based her testimony on several of the factors expressed in *Arthur Andersen & Co. v. Perry Equipment Corporation* for determining the reasonableness of attorney's fees. *See* 945 S.W.2d 812, 818 (Tex. 1997) (stating that courts should consider, among other factors, time and labor required, novelty and difficulty of questions involved, skill required to perform legal services properly, fee customarily charged in locality for similar legal services, nature and length of professional relationship with client, experience, reputation, and ability of lawyer performing services, and whether fee is fixed or contingent on results obtained or uncertainty of collection before legal services have been rendered). Contrary to Schlein's argument, it was not necessary that McGarvey provide testimony on all of the factors enumerated in *Arthur Andersen* in order to provide a sufficient basis for her opinion. *See id.*; *see also Padilla v. NCJ Dev., Inc.*, 218 S.W.3d 811, 817 (Tex. App.—El Paso 2007, pet. dism'd w.o.j.) ("*Arthur Andersen & Co.* does not require an attorney to present evidence of every factor in order to be entitled to an attorney's fee award.").

Schlein also argued that McGarvey offered no evidence of the reasonableness of the entire fee charged by Griffin. Although McGarvey never testified that the total fee charged was reasonable and necessary, she did testify that

the hourly rate charged and the total number of hours billed were both reasonable and necessary. *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012) (providing that determining reasonable attorney's fees under lodestar method involved determining reasonable hours spent by counsel on and reasonable hourly rate for such work, then multiplying number of such hours by applicable rate).

Furthermore, McGarvey's testimony was not the only evidence in the record regarding the amount of damages in the form of reasonable and necessary attorney's fees in the underlying litigation. Griffin himself testified and presented extensive evidence regarding specific tasks that he performed on Schlein's behalf, the time he spent performing those tasks, when he performed the tasks, and the hourly rate he charged. *See Long v. Griffin*, 442 S.W.3d 253, 255 (Tex. 2014) (holding that "generalities about tasks performed" are insufficient to support determination that fees were reasonable and necessary and that "[s]ufficient evidence includes, at a minimum, evidence 'of the services performed, who performed them and at what hourly rate, when they were performed, and how much time the work required'") (quoting *Olivas*, 370 S.W.3d at 767).

We overrule Schlein's ninth issue.

**D. Jury's Finding of No Actual Damages on Schlein's DTPA Claim**

In her seventh issue on appeal, Schlein argues that the jury's finding of no actual damages for Griffin's having engaged in an unconscionable course of conduct was not supported by legally and factually sufficient evidence.

*1. Relevant facts*

One of Schlein's counter-claims against Griffin alleged that he violated the DTPA by engaging in unconscionable actions or courses of action that cannot be characterized as advice, judgment, or opinion. She sought actual damages, and she sought to recover "up to three times the amount of her economic and mental anguish damages because Griffin's conduct was committed knowingly or intentionally."

At trial, Schlein asserted that Griffin wrongfully threatened to file a motion to vacate the divorce decree because of her nonpayment of the fees, that he failed to file an insurance claim for damage done to the Enterprise House during Hurricane Ike, that he failed to continue on her case until it was completely resolved, that he failed to return her case file and property, and that he misrepresented the Fee Agreement and failed to comply with its terms, which she believed required that he charge her only a flat fee of $35,000. The jury found that Griffin "engage[d] in [an] unconscionable action or course of action that was a

producing cause of damages to Barbara Schlein" and that he engaged in such conduct intentionally. Griffin does not challenge this finding on appeal.

However, the jury found no actual damages resulting from those actions. The jury charge asked, "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Barbara Schlein for her damages, if any, that resulted from such conduct?" and it provided separate lines for different measures of damages:

a. the amount, if any, that Barbara Schlein paid in excess to Anthony Griffin for legal services promised by Anthony Griffin.

b. the amount of reasonable and necessary attorney's fees incurred as a result of Barbara Schlein having to hire new attorneys to complete the divorce matter started by Anthony Griffin.

c. the amount of reasonable and necessary attorney's fees incurred as a result of Barbara Schlein having to hire new attorneys to complete other matters started by Anthony Griffin.

The jury responded with "$0" for each of these measures of damages.[3]

Schlein argues that her expert, Gary Jewell, provided some evidence of her damages in the form of testimony regarding his firm's work in completing matters originally started by Griffin, and thus the jury's finding of zero damages is not supported by legally or factually sufficient evidence. Jewell testified that his firm

---

[3] The jury found, however, that Schlein should be awarded $5,000 "in addition to actual damages . . . because Anthony Griffin's conduct was committed knowingly or intentionally."

53

billed Schlein $27,962.50 for resolving the underlying divorce action, including procuring some modifications to the final divorce decree entered before Griffin withdrew from representing Schlein. Jewell stated that his firm also billed $9,896.25 in fees related to resolving the case against the homebuilders, $2,800.00 for removing the wrongful lien against the unfinished home, $7,498.75 relating to resolution of the tax case for the house, and $2,481.25 to expunge the arrest record relating to criminal charges arising during the divorce proceeding.

2.    *Analysis*

Regarding the first measure of damages—"the amount, if any, that Barbara Schlein paid in excess to Anthony Griffin for legal services promised by Anthony Griffin"—it was reasonable for the jury to conclude that Schlein did not pay any amount in excess for Griffin's promised legal services. Griffin testified that Schlein never paid him for his legal services, and Schlein herself acknowledged that she never paid Griffin in money for his services. Thus, there is legally sufficient evidence supporting the finding of $0 for this measure. *See City of Keller*, 168 S.W.3d at 810, 827.

Schlein stated that Griffin kept her tile for reimbursement of his fees and argued at trial that this constituted payment. In fact, she testified and put on expert evidence that the appraised value of the tile exceeded the $35,000 retainer that she agreed to pay, so Griffin owed her for the excess value. However, Griffin testified

that he never agreed to accept the tile as payment for any portion of his fees, and, after seeking resolution of his involvement in the divorce proceedings and being allowed to withdraw, he asked Schlein on more than one occasion to come retrieve the tile. Accordingly, considering and weighing all the evidence, we conclude that it is not so weak, nor is the finding so against the great weight and preponderance of the evidence, that it is clearly wrong and manifestly unjust. *See Jackson*, 116 S.W.3d at 761–62.

Furthermore, as we have already addressed above, the jury found that Griffin was entitled to $105,750 in reasonable and necessary attorney's fees that Schlein incurred during the divorce proceedings but never paid. Griffin detailed the work he performed on Schlein's behalf related to the divorce proceeding, including filing several mandamuses, conducting discovery, filing numerous pleadings and motions, appearing at numerous hearings, representing her during a lengthy trial, and seeking and obtaining the entry of the final decree of divorce. We have concluded that sufficient evidence supported the jury's determination that these fees were reasonable and necessary.

Regarding the other measures of damages in the charge—the amount of reasonable and necessary attorney's fees Schlein incurred as a result of having to hire new attorneys to complete the divorce and other matters—we conclude that

there is sufficient evidence supporting the jury's finding that none of the additional fees were attributable to any misconduct by Griffin.

Jewell testified that Schlein incurred $27,962.50 in attorney's fees for work his firm did in seeking modifications of the final divorce decree and otherwise resolving the remaining issues in the divorce. Jewell also testified that Schlein incurred an additional $22,676.25 for completing other matters initially worked on by Griffin. However, Schlein points to no testimony or other evidence that Griffin's conduct was a substantial factor in bringing about these fees or that the fees would not have been incurred without his unconscionable actions. *See Holliday v. Weaver*, 410 S.W.3d 439, 443 (Tex. App.—Dallas 2013, pet. denied) ("To recover under the DTPA, a consumer must prove that the defendant's wrongful conduct was the producing cause, or cause in fact, of the consumer's damages. Producing cause is a substantial factor which brings about the injury and without which the injury would not have occurred.") (internal citations and quotation marks omitted) (citing TEX. BUS. & COM. CODE ANN. § 17.50(a), *Latham v. Castillo*, 972 S.W.2d 66, 69 (Tex. 1998), and *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 481 (Tex. 1995)). The fact that he withdrew from representing her based on her non-payment of fees prior to the complete resolution of the divorce proceeding or other matters does not, by itself, prove that his actions caused her to incur the additional attorney's fees. Nor does evidence that he

56

misrepresented his own fees or services establish that she would not have had to pay attorney's fees associated with post-judgment work in the divorce case and the fees associated with resolving her other legal issues.

Schlein cites *First Texas Savings Association of Dallas v. Dicker Center, Inc.*, 631 S.W.2d 179 (Tex. App.—Tyler 1982, no writ), for the proposition that "if evidence of reasonable attorney's fees is offered, a finding that the services of an attorney are without monetary value is factually insufficient." However, the jury question here did not ask the jury to determine the reasonable value of Schlein's new attorney's legal services—it asked the jury to determine what amount of those services could be attributable to, or were caused by, Griffin's unconscionable actions. Thus, *Savings Association* is distinguishable from the present case and its reasoning does not apply.

We conclude that legally and factually sufficient evidence supports the jury's finding of zero actual damages arising from an unconscionable act or course of action by Griffin. *See City of Keller*, 168 S.W.3d at 810, 827; *Jackson*, 116 S.W.3d at 761–62.

We overrule Schlein's seventh issue.

**E.    Jury's Finding of Additional DTPA Damages**

In his first issue on appeal, Griffin complains that "the finding of no actual damages on the unconscionability question is fatal to the finding of additional

damages under the [DTPA]." In this issue, he essentially argues that the evidence supporting the jury's finding of additional damages is legally insufficient because such damages are not available as a matter of law when there are no actual damages.

### 1. Background Facts

As stated above, the jury found, in response to Schlein's allegations that Griffin violated the DTPA, that Griffin "engage[d] in [an] unconscionable action or course of action that was a producing cause of damages to Barbara Schlein" and that he engaged in such conduct intentionally. The jury found no actual damages resulting from those actions, and we have concluded that the evidence was sufficient to support that finding.

However, Schlein, in her pleadings, also sought to recover "up to three times the amount of her economic and mental anguish damages because Griffin's conduct was committed knowingly or intentionally." The jury found that Schlein should be awarded $5,000 "in addition to actual damages . . . because Anthony Griffin's conduct was committed knowingly or intentionally."

Griffin argued in his motion to enter judgment for a JNOV on the DTPA questions, arguing that the evidence was legally and factually insufficient to support the jury's findings that he engaged in unconscionable conduct and that Schlein was entitled to additional damages of $5,000, and he argued that these

adverse findings on the DTPA claim could not stand as a matter of law. The trial court denied this portion of Griffin's motion and rendered judgment awarding Schlein $5,000 for additional damages on her DTPA claim.

2.    *Damages under the DTPA*

Under the DTPA, "a consumer may maintain an action where [specific, enumerated actions] constitute a producing cause of economic damages or damages for mental anguish," including when a person engages in "any unconscionable action or course of action." TEX. BUS. & COM. CODE ANN. § 17.50(a)(3) (Vernon 2011). The statute further provides that a prevailing consumer may recover "the amount of economic damages found by the trier of fact" and, when the trier of fact finds that the defendant's conduct was knowing or intentional, "the trier of fact may award not more than three times the amount of damages for mental anguish and economic damages." *Id.* § 17.50(b)(1), (h). Thus, in actions for violations of the DTPA, the plaintiff cannot recover exemplary damages. *See id.* § 17.50(g); TEX. CIV. PRAC. & REM. CODE ANN. § 41.002(d)(2) (Vernon 2015); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006) (holding that plaintiff who prevails on DTPA may recover economic damages, mental anguish damages, and attorney's fees, but not additional damages beyond three times her economic damages when defendant's conduct was knowing).

Furthermore, under the plain language of the statute, additional damages are limited to "not more than three times the amount of damages for mental anguish and economic damages," so without an award of actual damages, a party is not entitled to additional damages. *See* TEX. BUS. & COM. CODE ANN. § 17.50(b)(1), (h); *Chapa*, 212 S.W.3d at 304; *see also Household Fin. Corp. III v. DTND Sierra Invs., LLC*, No. 04-13-00033-CV, 2013 WL 5948899, at \*12 (Tex. App.—San Antonio Nov. 6, 2013, no pet.) ("As for treble damages under the DTPA, it is axiomatic that without a recovery of actual damages, a plaintiff is not entitled to treble damages.").

3. *Analysis*

The jury awarded additional DTPA damages even though it found no actual damages. We have already determined that the jury's finding of zero actual damages is supported by legally and factually sufficient evidence. As a matter of law, in the absence of actual damages on the DTPA claim, additional damages are not available here. *See* TEX. BUS. & COM. CODE ANN. § 17.50(b)(1), (h); *Chapa*, 212 S.W.3d at 304; *Household Fin. Corp. III*, 2013 WL 5948899, at \*12. Thus, we are barred by a rule of law from giving weight to any evidence that might support the jury's award of additional damages to Schlein on this issue. *See City of Keller*, 168 S.W.3d at 810.

Schlein argues that Griffin failed to preserve this complaint. However, a party may preserve a legal sufficiency challenge for consideration on appeal by raising the issue in a motion for JNOV, as Griffin did here. *See Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex. 1991).

We sustain Griffin's issue and modify the judgment to delete the award of additional damages.[4]

## Conclusion

We modify the judgment of the trial court by removing the portion of the judgment awarding Schlein $5,000 in additional DTPA damages. We affirm the judgment was modified.

Evelyn V. Keyes
Justice

Panel consists of Justices Jennings, Keyes, and Bland.

---

[4] Because we sustain Griffin's legal sufficiency challenge to the jury's finding of additional DTPA damages, we need not address Griffin's remaining complaints regarding errors in the charge or the applicability of the DTPA's professional services exemption.